******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DANIEL GREER
## (AC 43726)

Bright, C. J., and Elgo and DiPentima, Js.

*Syllabus*

Convicted of four counts of risk of injury to a child, the defendant appealed to this court. The defendant, a rabbi, was a teacher at and served as the dean of a private, Orthodox Jewish high school. The victim, E, attended the school for four years, commencing in 2001. E alleged that, during his sophomore year, when he was fourteen and fifteen years old, he and the defendant met at least once a week to engage in various sexual acts. The defendant continued to engage in sexual acts with E after he turned sixteen years old. In 2016, E reported the sexual abuse to the police. The defendant was arrested and charged with four counts each of sexual assault in the second degree and risk of injury to a child. At trial, the state introduced uncharged misconduct evidence pursuant to a provision (§ 4-5) of the Connecticut Code of Evidence regarding a sexual relationship between the defendant and R, a former student at the school, and the defendant's relationship with E after his sixteenth birthday. Following R's testimony, the court provided a limiting instruction to the jury. After the close of evidence at trial, defense counsel moved for a judgment of acquittal as to the charges of sexual assault in the second degree on the ground that the prosecution was barred by the applicable statute ((Rev. to 2001) § 54-193a, as amended by Public Acts 2002, No. 02-138, § 1) of limitations because E had not notified a police officer or state's attorney within five years of the commission of the offense. The state conceded that the charges were barred, and the trial court granted the motion for a judgment of acquittal. Thereafter, the state filed a new information limited to the four counts of risk of injury to a child. In its final instructions to the jury, the court instructed in relevant part regarding misconduct evidence: "It is for you to determine whether the defendant committed any uncharged sexual misconduct . . . ." The jury found the defendant guilty. The defendant filed postverdict motions for a judgment of acquittal and a new trial, claiming, inter alia, that the limitation period applicable to the charges of sexual assault in the second degree should also apply to the risk of injury charges because the charges were based on the same conduct. The trial court denied the motions, and the defendant appealed to this court. *Held*:

1. The trial court properly denied the defendant's motion for a judgment of acquittal as to the risk of injury charges: our courts previously have concluded that risk of injury to a child and sexual assault are separate and distinct offenses; moreover, contrary to the defendant's assertion, the requirement that a victim notify a police officer or state's attorney of an offense within five years of its commission was limited by the plain and unambiguous language of § 54-193a to charges of sexual assault in the second degree pursuant to statute (§ 53a-71 (a) (1)); furthermore, if the legislature had intended the additional reporting requirement to also apply to charges of risk of injury under the applicable statute (§ 53-21 (a) (2)), it would have stated so expressly, and, accordingly, for the court to expand the requirement to violations of § 53-21 (a) (2) would be contrary to the presumed intent of the legislature; additionally, applying different statutes of limitations to the two sets of charges would not lead to an absurd or unworkable result, as two criminal statutes can be construed to proscribe the same conduct and a defendant may be prosecuted under either.

2. The trial court properly instructed the jury as to the evidence of uncharged misconduct: the defendant adequately preserved his challenge to the trial court's instructions regarding the uncharged misconduct evidence involving the defendant's continued sexual acts with E after E turned sixteen by stating in his request to charge that, "[a]s to any evidence of uncharged misconduct," the state had the burden to prove such conduct by clear and convincing evidence; moreover, the trial court instructed that it was for the jury "to determine" whether the defendant engaged in the acts of uncharged misconduct and, contrary to the defen-

dant's assertions, there was no meaningful distinction between an instruction that a jury may consider prior misconduct evidence if it "believes" such evidence, which our Supreme Court endorsed in *State* v. *Cutler* (293 Conn. 303) and which is used in the Connecticut Criminal Jury Instructions, and the trial court's use of the word "determine"; accordingly, the trial court's instructions regarding the uncharged misconduct were not deficient.

Argued February 28—officially released July 19, 2022

*Procedural History*

Substitute information charging the defendant with four counts each of the crimes of sexual assault in the second degree and risk of injury to a child, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, and tried to the jury before *Alander, J.*; thereafter, the court, *Alander, J.*, granted the defendant's motion for a judgment of acquittal as to the four counts of sexual assault in the second degree; verdict of guilty of four counts of risk of injury to a child; subsequently, the court, *Alander, J.*, denied the defendant's postverdict motions for a judgment of acquittal and a new trial and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Richard Emanuel*, with whom was *David T. Grudberg*, for the appellant (defendant).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, former state's attorney, and *Maxine Wilensky* and *Karen A. Roberg*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

BRIGHT, C. J. The defendant, Daniel Greer, appeals from the judgment of conviction, rendered after a jury trial, of four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that the court improperly (1) concluded that the statute of limitations applicable to sexual assault in the second degree under General Statutes (Rev. to 2001) § 54-193a, as amended by Public Acts 2002, No. 02-138, § 1 (effective May 23, 2002) (P.A. 02-138),[1] did not apply to the risk of injury charges and (2) declined to instruct the jury to apply a standard of proof to determine whether certain prior misconduct occurred. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant, who is a rabbi, founded Yeshiva of New Haven, Inc. (yeshiva), a private, Orthodox Jewish school, and served as a dean, rabbi, and teacher at the yeshiva. The victim, E,[2] attended the yeshiva for high school, beginning his freshman year in August or September, 2001, when he was thirteen years old. E's birthday is in October, and he turned fourteen years old during his freshman year. Shortly after the school year began, E was expelled from the yeshiva, but he was allowed to return to complete his freshman year after spending a few weeks at home.

In 2002, when he was fourteen years old, E returned to the yeshiva for his sophomore year. At some point during the beginning of the school year, the defendant told E to meet him at an apartment adjacent to the school, and E complied. At the apartment, the defendant offered E a can of nuts and an alcoholic drink, either wine or hard liquor, in a red Solo cup. They proceeded to drink and talk about E's family and his future, and E began to get emotional and his head felt "fuzzy . . . ." At some point, the defendant touched E's thigh or crotch area and attempted to kiss him on the lips. When E pulled away and asked the defendant what he was doing, the defendant said that "[i]t wasn't a big deal and that this is what he does to his kids." Nothing further transpired, and E returned to his dormitory.

After the initial incident at the apartment, E and the defendant met at least once a week during his sophomore year at various locations—often in New Haven or at a motel in Branford—and engaged in oral or anal sex. During these encounters, the defendant and E often would consume alcohol. E acknowledged that "the encounters meld together" but was "very sure" that he and the defendant engaged in anal and oral sex during his sophomore year, during which time he was fourteen and fifteen years old. He testified that, during that period, he and the defendant frequently performed oral sex on each other, that he performed anal sex on the

defendant "many" times, and that, when the defendant attempted to perform anal sex on E, E forced him to stop because it was too painful. After these encounters, E would feel "shame, guilt, [and] confusion." At the yeshiva, the defendant gave E preferential treatment and would not yell at him as he regularly did with other students. When E attempted to end the sexual relationship, the defendant stopped giving him preferential treatment and became "nasty" instead of "nice and charming . . . ." The defendant continued to engage in sexual acts with E after he turned sixteen years old in October, 2003.

After graduating in 2005, E went to an Orthodox yeshiva in Israel to continue his Jewish studies and met S, his future wife, while staying there. In 2006, E told S that the defendant had molested him during high school, but he did not provide any details about the abuse. In the summer of 2006, E returned to Connecticut and met the defendant at the Branford motel, where they had their last sexual encounter.

In December, 2007, E and S were married, and the defendant was one of the witnesses at the ceremony, which is a position of honor. E explained that he gave the defendant this honor because he respected the defendant and "still felt part of the New Haven community . . . ." For several years following their marriage, E and S would travel to New Haven for Jewish holidays, where they would share meals with members of the yeshiva community, including the defendant. When E and S had a son in June, 2010, E asked the defendant to hold the baby during the circumcision, which is also a position of honor.

In 2013, E and S bought a house in New Jersey, and E found a rabbi in that community. Around that time, E stopped traveling to New Haven and communicating with the defendant. At some point before 2016, E disclosed the abuse to his therapist and two family friends, one of whom was working at the yeshiva. In May, 2016, E filed a civil action in federal court against the defendant seeking money damages stemming from the sexual abuse. In August, 2016, while the civil action was pending, E reported the sexual abuse to the New Haven Police Department.

On July 26, 2017, the defendant was arrested and charged with four counts of sexual assault in the second degree under General Statutes § 53a-71 (a) (1)[3] and four counts of risk of injury to a child under § 53-21 (a) (2).[4] In the operative long form information, the state alleged that the charged conduct occurred when E was fourteen and fifteen years old, "at the city of New Haven on divers dates between 2002 up to October 27, 2003 . . . ." As the state acknowledged at oral argument before this court, the sexual assault and risk of injury charges were premised on the same conduct—anal intercourse and fellatio.[5]

The case proceeded to a jury trial, and, at the close of evidence, defense counsel moved for a judgment of acquittal as to the charges of sexual assault in the second degree on the ground that the prosecution was barred by the statute of limitations set forth in § 54-193a because E had not notified a police officer or state's attorney within five years after the commission of the offense. After a brief recess, the state conceded that the sexual assault charges are barred under § 54-193a, and the court granted the motion for a judgment of acquittal as to the four counts of sexual assault in the second degree (counts one, three, five, and seven). Thereafter, the state filed a new information limited to the four counts of risk of injury to a child, and the jury found the defendant guilty of those charges.

The defendant filed postverdict motions for a judgment of acquittal and a new trial. In the memorandum of law in support of the motions, the defendant claimed, inter alia, that the same limitation period applicable to sexual assault in the second degree should apply to the risk of injury charges because all of the charges were based on the same conduct.[6] After hearing argument, the court rejected the defendant's statute of limitations claim and denied the motions. Thereafter, the court sentenced the defendant to twenty years of incarceration, execution suspended after twelve years, followed by ten years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the same limitation period that applied to the charges of sexual assault in the second degree also applies to the risk of injury charges, which were based on the same conduct and proved by the same evidence. We are not persuaded.

As a preliminary matter, we set forth our standard of review and the legal principles that guide our analysis. The defendant's statute of limitations claim presents an issue of statutory construction. "Issues of statutory construction present questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *500 North Avenue, LLC* v. *Planning Commission*, 199 Conn. App. 115, 121, 235 A.3d 526, cert. denied, 335 Conn. 959, 239 A.3d 320 (2020); see also *State* v. *George J.*, 280 Conn. 551, 562–63, 910 A.2d 931 (2006) (statute of limitations claims raise questions of statutory construction subject to plenary review), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and con-

sidering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . .

"[I]t is reasonable to presume that, by rejecting the underlying premise [of a prior decision], the legislature also . . . express[es] its disapproval of [the court's prior] conclusion . . . . The legislature can reject the underlying premise of a decision by changing or deleting a provision on which the court relied. This is especially true when that provision exists elsewhere in the statutory scheme. For instance, [when] a statute, with reference to one subject, contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . This tenet of statutory construction ensures that statutes [are] construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant, and that every sentence, phrase and clause is presumed to have a purpose." (Citations omitted; internal quotation marks omitted.) *Gilmore* v. *Pawn King, Inc.*, 313 Conn. 535, 542–43, 98 A.3d 808 (2014).

"The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. . . . Indeed, it is because of the remedial nature of criminal statutes of limitation[s] that they are to be liberally interpreted in favor of repose." (Citation omitted; internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 677, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

In accordance with § 1-2z, we begin with the text of § 54-193a, which provides in relevant part: "Notwithstanding the provisions of section 54-193, no person may be prosecuted for any offense, except a class A felony, involving sexual abuse, sexual exploitation or sexual assault of a minor except within thirty years from the date the victim attains the age of majority or

within five years from the date the victim notifies any police officer or state's attorney acting in such police officer's or state's attorney's official capacity of the commission of the offense, whichever is earlier, provided if the prosecution is for a violation of subdivision (1) of subsection (a) of section 53a-71 . . . the victim notified such police officer or state's attorney not later than five years after the commission of the offense." General Statutes (Rev. to 2001) § 54-193a, as amended by P.A. 02-138.

Thus, for an offense involving sexual abuse, sexual exploitation, or sexual assault of a minor, the statute of limitations is the earlier of (1) thirty years from the date the victim reaches eighteen years old or (2) five years from the date the victim notifies law enforcement or a state's attorney of the offense. See General Statutes (Rev. to 2001) § 54-193a, as amended by P.A. 02-138. The legislature, however, provided a further requirement for a violation of § 53a-71 (a) (1), which involves sexual intercourse between a victim at least age thirteen but under age sixteen and an actor at least three years older, that the victim notify a police officer or prosecutor within five years after the offense is committed. See General Statutes (Rev. to 2001) § 54-193a, as amended by P.A. 02-138. That reporting requirement is at issue in the present case.

It is undisputed that E did not report the defendant's conduct to the police within five years of its occurrence. In fact, it was for this reason that the court granted the judgment of acquittal as to the sexual assault charges. The defendant argues that, because the sexual assault and risk of injury charges were based on the same conduct, "it would be illogical and unreasonable to apply a greater limitation period to that same conduct when it is *simultaneously* prosecuted under the risk of injury statute—a statute that *does not* require proof of sexual intercourse or penetration, and which can be violated simply by proof of over the clothes contact with the intimate parts of the perpetrator or the intimate parts of the child victim. Such a bizarre or irrational result was undoubtedly neither intended nor foreseen by the legislature . . . ." (Emphasis in original; footnote omitted; internal quotation marks omitted.) In response, the state asserts that the plain and unambiguous statutory language defeats the defendant's claim because, "where the legislature expressly has proscribed a shorter statute of limitations for one way of committing a crime . . . a reviewing court cannot presume that it also intended to extend that limitation to other crimes not specifically named."[7] We agree with the state.

As a preliminary matter, we note that "[o]ur courts have addressed the relationship between risk of injury to a child and the various degrees of sexual assault in the context of double jeopardy claims on several

occasions, each time concluding that the two crimes do not constitute the same offense. In *State* v. *Bletsch*, [281 Conn. 5, 28–29, 912 A.2d 992 (2007)], for example, [our Supreme Court] . . . concluded that, under the charging instruments in that case, the crimes of sexual assault in the second degree under . . . § 53a-71 (a), and risk of injury to a child under § 53-21 (a) (2), do not constitute the same offense for double jeopardy purposes because the language of the statutes makes it possible to have 'sexual intercourse' under § 53a-71 (a) without touching the victim's 'intimate parts' under § 53-21 (a) (2), and vice versa." *State* v. *Alvaro F.*, 291 Conn. 1, 7, 966 A.2d 712, cert. denied, 558 U.S. 882, 130 S. Ct. 200, 175 L. Ed. 2d 140 (2009). Accordingly, although the underlying conduct giving rise to the charges in the present case is the same, sexual assault in the second degree and risk of injury to a child are separate and distinct offenses.

Notwithstanding this fact, the defendant, relying on *State* v. *George J.*, supra, 280 Conn. 571–76, contends that the same statute of limitations should apply to both offenses. In *George J.*, the defendant claimed that his prosecutions for two counts of risk of injury to a child were time barred under General Statutes (Rev. to 1993) § 54-193, which provided the statute of limitations for nonclass A felony offenses generally. Id., 571. The defendant argued that General Statutes (Rev. to 1993) § 54-193a, as amended by Public Acts 1993, No. 93-340, § 11 (P.A. 93-340), which provided an extended statute of limitations " 'for any offense involving sexual abuse, sexual exploitation or sexual assault of a minor,' " applied "only to offenses for which sexual abuse, sexual exploitation or sexual assault of a minor is an element of the crime, and that risk of injury is not such an offense because conduct other than sexual acts against minors is encompassed within that offense." Id. At the time of the offense, General Statutes (Rev. to 1993) § 53-21 did not include subsection (2), which was added in 1995 to address sexual contact with a minor child. Id., 573–74 and n.15.

In rejecting the defendant's claim, the court noted that "the legislature has created an extended limitations period to allow child sexual abuse victims, who may be unable to come forward at the time the offense has occurred, a reasonable opportunity to report the abuse. It would thwart that purpose and create disharmony to apply the extended statute of limitations to a sexual assault offense, but apply the general limitations period of five years from the date of the offense to a risk of injury charge involving the same conduct. The law prefers rational and prudent statutory construction, and we seek to avoid interpretations of statutes that produce odd or illogical outcomes." Id., 574–75.

The defendant contends that "the 'odd or illogical outcome' that the *George J.* court sought to avoid,

would occur here if the court allowed the risk of injury convictions to stand—convictions based on the same essential conduct underlying the time barred sexual assault charges. . . . Where, as here, the alleged violations of § 53-21 (a) (2) are based on the same conduct forming the basis for the sexual assault charges under § 53a-71 (a) (1), the same five year statute should apply." (Footnote omitted.) We disagree.

In *George J.*, our Supreme Court sought to determine whether the extended statute of limitations for sex offenses against minors applied to the risk of injury statute despite the fact that General Statutes (Rev. to 1993) § 53-21 did not include a sexual element of the offense. *State* v. *George J.*, supra, 280 Conn. 573. In rejecting the state's contention that General Statutes (Rev. to 1993) § 54-193a "clearly" applied to risk of injury to a child, the court explained that "the meaning of the statute is not plain and unambiguous, because it does not refer expressly either to the crime of risk of injury or to the statute addressing that crime, and there is more than one reasonable construction based solely on the text of the statute. Indeed, because the crime of risk of injury does not *necessarily* involve sexual abuse, we certainly cannot conclude that [General Statutes (Rev. to 1993)] § 54-193a becomes unambiguous by looking to the crime charged in the present case." (Emphasis in original; internal quotation marks omitted.) Id., 563 n.8. Nevertheless, after considering the specific language the legislature chose to use in General Statutes (Rev. to 1993) § 54-193a, the legislative policy underlying the statute, and the bill analysis prepared by the Office of Legislative Research (OLR), the Supreme Court concluded that the extended statute of limitations applied to risk of injury charges that were based on sexual abuse, sexual assault, or sexual exploitation of a minor. Id., 572–76.

Specifically, the court first noted that, at the time of the defendant's conduct, "[i]t [was] well established that [General Statutes (Rev. to 1993) § 53-21's] proscription on actions that create a risk of 'impair[ing]' the 'health or morals' of a child encompasses a broad range of acts, including sexual acts against minors." Id., 572. The court then defined the question before it as "whether, by creating an extended statute of limitations for '*any* offense . . . *involving* sexual abuse, sexual exploitation or sexual assault of a minor' . . . General Statutes (Rev. to 1993) § 54-193a, as amended by P.A. 93-340, § 11; the legislature intended that the statute apply to any such conduct or only to such conduct when it expressly is prescribed as an element of the offense." (Emphasis in original.) *State* v. *George J.*, supra, 280 Conn. 573. The court answered that question by comparing General Statutes (Rev. to 1993) § 54-193a with other criminal statutes of limitations: "[General Statutes (Rev. to 1993) §] 54-193a is one of three criminal statutes of limitations. Notably, in both of the other

statutes of limitations, the legislature specifically has provided the statutory provisions to which the limitations period applies; see General Statutes § 54-193b;[8] or has delineated the statutory provisions or classes of offenses that are excluded from the limitations period. See General Statutes (Rev. to 1993) § 54-193. By contrast, in § 54-193a, the legislature did not cite specific statutes to which the expanded limitations period applies; rather, it used a broad descriptive phrase, 'any offense[s] involving . . . .' General Statutes (Rev. to 1993) § 54-193a, as amended by P.A. 93-340, § 11. It is difficult to imagine how the legislature could have phrased the statute more expansively and yet still limited its reach to sexual acts against children." (Footnote in original; footnote omitted.) *State* v. *George J.*, supra, 573–74. The court concluded that its interpretation was consistent with OLR's analysis of the public act, which was codified at § 54-193a. Id., 575.

As noted previously in this opinion, the court also discussed the legislative policy underlying General Statutes (Rev. to 1993) § 54-193a and concluded that applying the extended statute of limitations to a sexual assault offense but not to a risk of injury offense based on the same conduct would thwart the policy behind the statute, create disharmony, and produce odd or illogical outcomes. Id., 574–75. It is this policy statement on which the defendant relies to argue that it would create similar disharmony to apply the reporting requirement in § 54-193a to violations of § 53a-71 (a) (1) but not to risk of injury violations based on the same conduct.

The problem with the defendant's argument is that it ignores the plain and unambiguous language of the statute. The legislature specifically identified § 53a-71 (a) (1) as the sole statute to which the additional reporting requirement applies. General Statutes (Rev. to 2001) § 54-193a, as amended by P.A. 02-138. Given the plain and unambiguous statutory language, we cannot expand § 54-193a's limited exception for a prosecution of sexual assault in the second degree under § 53a-71 (a) (1) and apply it to a risk of injury charge under § 53-21 (a) (2). Indeed, to do so "would contravene the doctrine of expressio unius est exclusio alterius—the expression of one thing is the exclusion of another—[under which] we presume that when the legislature expresses items as part of a group or series, an item that was not included was deliberately excluded. . . . Put differently, it is well settled that [w]e are not permitted to supply statutory language that the legislature may have chosen to omit." (Citation omitted; internal quotation marks omitted.) *Mayer* v. *Historic District Commission*, 325 Conn. 765, 776, 160 A.3d 333 (2017).

Furthermore, our conclusion is consistent with the reasoning in *George J.*, in which our Supreme Court expressly relied on the fact that the legislature did not

limit the expanded statute of limitations in General Statutes (Rev. to 1993) § 54-193a to specific criminal statutes. *State* v. *George J.*, supra, 280 Conn. 573–74. It further noted that this was in stark contrast to other statutes of limitations that either were limited to specific statutes or excluded specific statutes from their operation. Id., 573. Relevant to the present case, the legislature did not provide that the additional reporting requirement applied to *any offense* involving sexual intercourse with another person between the ages of thirteen and sixteen when the defendant is more than three years older than such person. Instead, the legislature specifically limited the application of the reporting requirement to only "a violation of subdivision (1) of subsection (a) of section 53a-71 . . . ." General Statutes (Rev. to 2001) § 54-193a, as amended by P.A. 02-138. Consistent with our Supreme Court's conclusion in *George J.*, we conclude that, had the legislature intended a different application of the statute, it readily could have so provided. See *State* v. *George J.*, supra, 574.

Finally, we are not persuaded that applying a different statute of limitations to the two sets of charges in the present case leads to an absurd or unworkable result. As this court has recognized, "[t]wo criminal statutes can be construed to proscribe the same conduct and a defendant can be prosecuted under either." *Evans* v. *Commissioner of Correction*, 47 Conn. App. 773, 780–81, 709 A.2d 1136, cert. denied, 244 Conn. 921, 714 A.2d 5 (1998). Although the defendant suggests that the legislature intended for the reporting requirement to apply to the *conduct* giving rise to a prosecution of sexual assault in the second degree, as noted previously in this opinion, such an intent is not reflected in the statutory language.

As our Supreme Court has explained, "[o]ur statute of limitations distinguishes between offenses according to their severity, and there is nothing inconsistent in the fact that some prosecutions are barred where others are not. We further believe that confidence in our judicial system would be severely eroded if serious charges were dismissed by the courts for reasons of judicial policy, when the legislature, through the statute of limitations, has manifested an intent that they be prosecuted." *State* v. *Ellis*, 197 Conn. 436, 476, 497 A.2d 974 (1985). In the present case, we are persuaded that the legislature, by establishing an extended statute of limitations for "*any offense* . . . involving sexual abuse, sexual exploitation or sexual assault of a minor," has manifested an intent that charges of risk of injury to a child should be prosecuted, so long as the prosecution occurs within the extended statute of limitations. (Emphasis added.) General Statutes (Rev. to 2001) § 54-193a, as amended by P.A. 02-138; see also *State* v. *George J.*, supra, 280 Conn. 574 ("[i]t is difficult to imagine how the legislature could have phrased [General Statutes

(Rev. to 1993) § 54-193a] more expansively and yet still limited its reach to sexual acts against children"). The fact that the legislature identified a single statutory exception to that extended statute of limitations for a prosecution of sexual assault in the second degree does not indicate a contrary intent.

In sum, the legislature carved out a single exception to the extended statute of limitations under § 54-193a for the prosecution of a violation of § 53a-71 (a) (1). Had the legislature intended for the same exception to apply to § 53-21 (a) (2), it would have stated so expressly. Consequently, we conclude that § 54-193a is unambiguous and does not yield absurd or unworkable results. Therefore, the court properly denied the defendant's motion for a judgment of acquittal as to the risk of injury charges.[9]

## II

The defendant next claims that the court, in its midtrial and final instructions to the jury, improperly failed to provide the jury with a standard of proof to apply in determining whether the defendant had committed acts of uncharged misconduct. In response, the state argues that the defendant's challenge to the court's instruction as to the evidence of uncharged misconduct with E is unpreserved and unreviewable and that the court properly instructed the jury regarding the evidence of uncharged sexual misconduct with another student, R. We conclude that the defendant's claim is preserved and that the court properly instructed the jury.

The following additional facts and procedural history are relevant to the defendant's claim. Before trial, the state filed a motion to introduce uncharged misconduct evidence pursuant to § 4-5 of the Connecticut Code of Evidence.[10] The state sought to introduce evidence regarding a sexual relationship between the defendant and R, a former student who attended the yeshiva in 2008, and the defendant's sexual relationship with E after E's sixteenth birthday. Following oral argument, the court granted the state's motion, determining that the defendant's uncharged sexual misconduct with R was admissible to establish the defendant's propensity to commit the type of sexual misconduct with which he was charged under § 4-5 (b) of the Connecticut Code of Evidence and that the continuation of the defendant's sexual relationship with E was admissible to show the defendant's common plan or scheme to have continuous sexual relations with E under § 4-5 (c).[11]

At trial, the state presented testimony from E regarding incidents that occurred after his sixteenth birthday. Before the state elicited that testimony, the court provided a limiting instruction to the jury.[12] The state also presented testimony from R regarding incidents of uncharged sexual misconduct. R testified that, in 2008,

when he was thirteen or fourteen years old, the defendant had tutored him at the yeshiva. R recounted that the defendant frequently would touch R's crotch to get R's attention and that, when R attempted to position himself in such a way to avoid that contact, the defendant would touch R's "butt" instead. R also testified regarding one particular incident where, after he told the defendant that he received a good grade, the defendant drove him to a local park to celebrate. When they arrived at the park, they sat on a bench, and the defendant pulled out a bottle of wine, two plastic cups, and a can of nuts. After drinking some of the wine, R began to feel dizzy and decided to eat some of the nuts. R testified that, while he was eating the nuts, the defendant was "trying to, like, French kiss me and I was trying to keep my mouth shut." When R became upset, the defendant "got all embarrassed and said, like, 'oh, I'm out of line, it must be the alcohol.'" The defendant then brought R back to the school.

Following R's testimony, the court provided the following limiting instruction to the jury: "The state is claiming that the defendant engaged in other sexual . . . misconduct with someone other than [E], particularly with . . . [R]. The defendant has not been charged with any offense related to this alleged conduct. In a criminal case such as this in which the defendant is charged with a crime involving sexual misconduct, evidence of the defendant's commission of other sexual misconduct is admissible and may be considered to prove that the defendant had the propensity or tendency to engage in the type of criminal sexual behavior with which he is charged. However, evidence of prior misconduct on its own is not sufficient to prove that the defendant is guilty of the crimes charged in the information. It is for you to determine whether the defendant committed any uncharged sexual misconduct and, if so, the extent, if any, to which that evidence establishes that the defendant had the . . . propensity or tendency to engage in criminal sexual behavior. Please bear in mind as you consider this evidence that at all times the state has the burden of proving that the defendant committed each of the elements of the offenses which he is charged in the information, and I remind you that the defendant is not on trial for any act, conduct or offense not charged in the information."

Before the charge conference, the defendant filed a written request to charge regarding uncharged sexual misconduct, which provided in relevant part: "It is for you to determine whether the state has proven by clear and convincing evidence whether the defendant committed the alleged uncharged sexual misconduct. If you find that the state has met that standard, then you may determine the extent, if any, to which that evidence establishes that the defendant had a propensity or tendency to engage in criminal sexual behavior. Bear in mind as you consider this evidence that, at all times,

the state has the burden of proving that the defendant committed each of the elements of the offense charged in the information. As to any evidence of uncharged misconduct, the state's burden is to prove that conduct by clear and convincing evidence." (Footnote omitted.)

At the charge conference, the following exchange occurred between the court and defense counsel:

"The Court: . . . [Y]ou're asking me to tell the jury that any uncharged sexual misconduct has to be proven by clear and convincing evidence.

"[Defense Counsel]: Correct.

"The Court: Do you have any authority for that?

"[Defense Counsel]: It's cited, Your Honor. It's out-of-state authority. . . .

"The Court: And this says 'but see [*State* v. *Cutler*, 293 Conn. 303, 977 A.2d 209 (2009), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014)],' is that contrary authority?

"[Defense Counsel]: Absolutely. Yes.

"The Court: Okay. So you're asking me to overrule the Connecticut Supreme Court. . . . Your request is duly filed. That's not the law in the state of Connecticut and it's not—

"[Defense Counsel]: A journey of a million miles, Your Honor, begins with but a single step.

"The Court: No, I—I understand you may be pre—preserving for appellate review; I have no quarrel with that."

Shortly thereafter, while discussing the portion of the court's draft charge regarding evidence of the continuing sexual relationship between E and the defendant, which was titled "Evidence of Other Misconduct," defense counsel requested that the court instruct the jury that "[i]t is for you to determine, one, whether the state has proven such acts occurred . . . [and] [t]wo, if proven, whether they established what the state seeks to establish . . . ." Defense counsel explained that "[t]he way this is drafted it assumes that it has been proven; it doesn't really leave to the jury to determine. It essentially says, look, I, the judge, have admitted those, here's how you're supposed to use this, okay." When the prosecutor asked defense counsel to repeat himself, the court explained that "[h]e wants to emphasize that the state has to prove that these acts occurred." An exchange between the court and defense counsel followed:

"The Court: How . . . is it not clear when it says it is for you to determine; one, whether such acts occurred? How . . . does that assume that they've been proven?

"[Defense Counsel]: Because it's—it's the burden of the state to—to prove it. . . . Okay, they have to prove

it. . . . What I asked for earlier was a standard by which they can determine whether it was proven, that's a—a flaw in our scheme for these—for addressing these types of cases. The court, having rejected my request and anticipating—

"The Court: No, it's not a flaw, it's that you want a higher standard than the law requires. It's not that there isn't a standard, the standard is preponderance of the evidence, you gotta prove these facts by the preponderance of the evidence this—this uncharged misconduct or other misconduct; you have to prove the elements of the crime beyond a reasonable doubt.

"[Defense Counsel]: And you have to—my position is that the state has to prove these by some standard, okay, and—and the way this is phrased without putting it that way essentially there's an imprimatur from the court that these things are valid and have been proven.

"The Court: Yeah, I don't read it that way . . . ."

The court denied the defendant's requests and subsequently instructed the jury regarding the uncharged misconduct evidence as follows: "The state has submitted evidence that the defendant engaged in sexual misconduct with [R]. The defendant has not been charged in this case with any offenses related to this alleged conduct. In a criminal case such as this in which the defendant is charged with a crime involving sex—sexual misconduct, evidence of the defendant's commission of other sexual misconduct is admissible and may be considered to prove that the defendant had the propensity or a tendency to engage in the type of criminal sexual behavior with which he is charged. However, evidence of prior misconduct on its own is not sufficient to prove the defendant guilty of the crimes charged in the information. *It is for you to determine whether the defendant committed any uncharged sexual misconduct* and, if so, the extent, if any, to which that evidence establishes that the defendant had the propensity or a tendency to engage in criminal sexual behavior. Bear in mind as you consider this evidence that, at all times, the state has the burden of proving that the defendant committed each of the elements of the offenses charged in the information. I remind you that the defendant is not on trial for any act, conduct or offense not charged in the information.

"The state has also presented that the defendant continued to have sexual relations with [E] after [E] reached the age of sixteen . . . . This evidence has not been admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts and it cannot be used by you for such purposes. Such evidence has been admitted for a limited purpose only. This evidence was admitted to show or explain the full extent of the sexual relationship be—between the defendant and [E] and to show a common plan or

scheme by the defendant to have continuous sexual relations with [E]. The evidence may be used by you only for those purposes. *It is for you to determine, one, whether such acts occurred* and, two, if they occurred, whether they establish what the state seeks to establish." (Emphasis added.)

A

We first address whether the defendant preserved his claim of instructional error regarding the evidence of uncharged misconduct with E. The state claims that, in his written request to charge, "the defendant only asked the court to instruct that the state had to prove by clear and convincing evidence 'alleged uncharged sexual misconduct' admitted to prove 'that the defendant had a propensity or tendency to engage in criminal sexual behavior.' " Significantly, however, the second to last sentence of the request to charge provided: "*As to any evidence of uncharged misconduct*, the state's burden is to prove that conduct by clear and convincing evidence." (Emphasis added.) Moreover, the court understood the scope of the defendant's request to charge because the court explained: "It's not that there isn't a standard, the standard is preponderance of the evidence, you gotta prove these facts by the preponderance of the evidence this—*this uncharged misconduct or other misconduct . . . .*" (Emphasis added.) Consequently, we conclude that the defendant adequately preserved his challenge to the court's instructions as to the uncharged misconduct evidence involving E. See *State* v. *Ramon A. G.*, 336 Conn. 386, 395, 246 A.3d 481 (2020) ("[b]ecause the sine qua non of preservation is fair notice . . . the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity *to place the trial court on reasonable notice* of that very same claim" (emphasis added; internal quotation marks omitted)).

B

Having determined that the defendant preserved his claim that the court improperly failed to provide the jury with a standard by which to determine whether the acts of uncharged misconduct occurred, we now consider its merits.

We begin our analysis with the standard of review. "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party

under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Arroyo*, 292 Conn. 558, 566, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010).

In *State* v. *Cutler*, supra, 293 Conn. 303, our Supreme Court addressed a claim similar to the defendant's claim in the present case. In *Cutler*, the defendant claimed that the trial court improperly failed to instruct the jury to apply a preponderance of the evidence standard in considering uncharged misconduct evidence. Id., 315. The challenged instructions provided: "You may consider such evidence if you believe it, and further find that it logically and rationally supports the issue for which it is being offered by the state, but only as it may bear on the issue of intent. On the other hand, if you don't believe such evidence, or even if you do, if you find that it does not logically and rationally support the issue for which [it] is being offered by the state, namely the defendant's intent, then you may not consider the testimony for any purpose." (Internal quotation marks omitted.) Id., 316.

Our Supreme Court disagreed with the defendant and concluded "that it is not necessary that a trial court instruct the jury that it must find, by a preponderance of the evidence, that prior acts of misconduct actually occurred at the hands of the defendant. Instead, a jury may consider prior misconduct evidence for the proper purpose for which it is admitted if there is evidence from which the jury reasonably could conclude that the defendant actually committed the misconduct." (Footnote omitted.) Id., 322. The court explained that the trial court's "use of the word 'believe' comports with the requirement that a jury may consider prior misconduct evidence if there is evidence from which it reasonably could conclude that the defendant committed the acts. . . . [I]t is clear that the trial court's use of the word 'believe' is not only correct in law, but also sufficiently guides the jury as to its consideration of the prior misconduct evidence. If the jury believes the prior misconduct evidence, it follows logically that there is evidence from which the jury reasonably could conclude that the defendant committed the prior acts of misconduct." Id., 322–23.[13]

In the present case, the defendant notes that the "believe" instruction endorsed in *Cutler* is used in the Connecticut Criminal Jury Instructions[14] and by Connecticut judges when instructing on uncharged misconduct. He argues that, in the present case, he "*did not even* get the benefit of the (lower than a preponderance) 'believe' standard, which has its own deficiencies. Instead, the jury was allowed to make its decisions (on whether the defendant committed any misconduct)

unfettered by any uniform standard. . . . The court's instructional omission was patently erroneous." (Emphasis in original; footnote omitted.) We disagree.

Here, the court instructed that it was for the jury "to determine" whether the defendant engaged in the uncharged misconduct. We discern no meaningful distinction between the "believe" standard endorsed in *Cutler* and the court's use of the word "determine" in the present case. For that reason, we are not persuaded that the court's instructions were deficient. If anything, "determine" is a stronger standard than "believe." When used as a transitive verb, "believe" means "to consider to be true or honest" or "to accept the word or evidence of" or "to hold as an opinion . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 112. In the same context, "determine" means "to settle or decide by choice of alternatives or possibilities" or "to find out or come to a decision about by investigation, reasoning, or calculation . . . ." Id., p. 340. Thus, "believe" connotes, at least to some extent, subjective and emotional reasoning, whereas "determine" connotes more objective and logical reasoning. Accordingly, we find no error in the court's instructions to the jury that it must determine that something occurred rather than believe that it occurred. Consequently, we conclude that our Supreme Court's decision in *Cutler* controls and, therefore, that the court properly instructed the jury regarding the uncharged misconduct evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The legislature repealed § 54-193a effective October 1, 2019. Unless otherwise indicated, all references to § 54-193a in this opinion are to the 2001 revision of the statute, as amended by P.A. 02-138.

[2] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[3] General Statutes § 53a-71 provides in relevant part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than three years older than such other person . . . .

"(b) Sexual assault in the second degree is a class C felony or, if the victim of the offense is under sixteen years of age, a class B felony, and any person found guilty under this section shall be sentenced to a term of imprisonment of which nine months of the sentence imposed may not be suspended or reduced by the court."

Although § 53a-71 has been the subject of several amendments since the defendant's commission of the crime that formed the basis of his conviction; see, e.g., Public Acts 2004, No. 04-130, § 1 (establishing additional form of sexual assault when actor is twenty years old or older and stands in position of power, authority or supervision); Public Acts 2007, No. 07-143, § 1 (increasing, from two to three years, age difference between teenagers required for older individual to be guilty of sexual assault in second degree); those amendments have no bearing on the merits of this appeal. Accordingly, in the interest of simplicity, we refer to the current revision of the statute.

[4] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony for a violation of subdivision

(2) of this subsection . . . ."

Although § 53-21 has been the subject of several amendments since the defendant's commission of the crimes that formed the basis of his conviction; see, e.g., 2007 Public Acts, No. 07-143, § 4 (establishing five year mandatory minimum sentence for violation of § 53-21 (a) (2) when victim is under thirteen years old); 2013 Public Acts, No. 13-297, § 1 (adding additional form of risk of injury); those amendments have no bearing on the merits of this appeal. Accordingly, in the interest of simplicity, we refer to the current revision of the statute.

[5] Counts one, three, five, and seven alleged that the defendant violated § 53a-71 (a) (1) by engaging in the following conduct: "anal intercourse— Daniel Greer's penis with [E's] anus" (count one); "fellatio—Daniel Greer's penis in [E's] mouth" (count three); "anal intercourse—[E's] penis in Daniel Greer's anus" (count five); and "fellatio—[E's] penis in Daniel Greer's mouth" (count seven). Counts two, four, six, and eight alleged that the defendant violated § 53-21 (a) (2) based on the following contact between the defendant and E: "Daniel Greer's genital area with [E's] anus" (count two); "Daniel Greer's genital area with [E's] mouth" (count four); "[E's] genital area with Daniel Greer's anus" (count six); and "[E's] penis in Daniel Greer's mouth" (count eight).

[6] Although the defendant's memorandum stated that it was filed in support of both his motion for a new trial and his motion for a judgment of acquittal, it addressed only the defendant's claim that the risk of injury charges should be dismissed for the same reason that the sexual assault charges were dismissed. Thus, on the basis of the statute of limitations issue raised, the defendant sought a judgment of acquittal and not a new trial.

[7] The state also contends that the defendant waived this claim by failing to raise it at trial. We disagree.

In *State* v. *Golodner*, 305 Conn. 330, 355–56, 46 A.3d 71 (2012), the defendant filed postverdict motions for a judgment of acquittal and a new trial, asserting that one count of the substituted information was barred by the applicable statute of limitations. The trial court denied the motion, "stating that the defendant had failed to raise the statute of limitations defense in a timely manner . . . ." Id., 356. On appeal, the state argued "that the defendant waived an affirmative defense based on the statute of limitations by raising it for the first time after the conclusion of trial." Id. In rejecting the state's waiver argument, our Supreme Court noted that a waiver of a statute of limitations defense must be voluntary and intelligent and held that "[t]here [was] nothing to suggest a voluntary waiver on the part of the defendant . . . . His motion for acquittal based on the statute of limitations would suggest the contrary." Id., 359.

In the present case, as in *Golodner*, the defendant raised the statute of limitations defense in postverdict motions and, therefore, he did not voluntarily waive it. Although the state argues that *Golodner* is distinguishable because it involved an amendment to the information and, therefore, the statute of limitations defense was unavailable before trial; see id., 355–56; we are not persuaded that this fact had any bearing on the court's holding in *Golodner*. In fact, the court agreed with the defendant's argument in *Golodner* that Practice Book § 41-8's "use of the phrase 'if made prior to trial' suggests that the motion *does not have to be made before trial*." (Emphasis added.) Id., 356; see also Practice Book § 41-8 (statute of limitations defense "shall, if made prior to trial, be raised by a motion to dismiss the information").

The state also contends that the present case should be controlled by *State* v. *Pugh*, 176 Conn. App. 518, 535, 170 A.3d 710, cert. denied, 327 Conn. 985, 175 A.3d 43 (2017), in which this court held that, because the defendant failed to assert the statute of limitations defense at trial, "the defendant is deemed to have waived such defense and is, therefore, barred from raising it on appeal." Unlike the present case, however, the defendant in *Pugh* failed to raise the statute of limitations claim before the trial court and sought to raise it for the first time on appeal. See id. Therefore, the claim in *Pugh* was unpreserved. Accordingly, we conclude that *Pugh* is distinguishable and that *Golodner* is controlling.

[8] "General Statutes [Rev. to 2005] § 54-193b provides: 'Notwithstanding the provisions of sections 54-193 and 54-193a, a person may be prosecuted for a violation of section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b not later than twenty years from the date of the commission of the offense, provided (1) the victim notified any police officer or state's attorney acting in such police officer's or state's attorney's official capacity of the commission of the offense not later than five years after the commission

of the offense, and (2) the identity of the person who allegedly committed the offense has been established through a DNA (deoxyribonucleic acid) profile comparison using evidence collected at the time of the commission of the offense.' Although § 54-193b was enacted in 2000; see Public Acts 2000, No. 00-80, § 1; we nonetheless find it useful in discerning the type of language that the legislature could have used in 1995 had it intended that § 54-193a have a more limited, specific reach." *State* v. *George J.*, supra, 280 Conn. 573 n.16.

[9] The defendant also claims that, "[i]f this court has any reasonable doubt about the proper scope of § 54-193a, relief should be granted as a matter of lenity." "[T]he touchstone of this rule of lenity is statutory ambiguity. . . . [W]e . . . [reserve] lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." (Emphasis in original; internal quotation marks omitted.) *State* v. *Palmenta*, 168 Conn. App. 37, 47, 144 A.3d 503, cert. dismissed, 323 Conn. 930, 150 A.3d 230 (2016), and cert. denied, 323 Conn. 931, 150 A.3d 231 (2016). Here, because we conclude that the statute is not ambiguous and that it does not lead to absurd or unworkable results, we have no reason to resort to the rule of lenity. See id. ("[b]ecause we conclude that, after full resort to the process of statutory construction, there is no reasonable doubt as to the meaning of the statute, we need not resort to the rule of lenity"); see also General Statutes § 1-2z (when meaning of text of statute "is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered").

[10] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) General Rule. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person except as provided in subsection (b).

"(b) When evidence of other sexual misconduct is admissible to prove propensity. Evidence of other sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct if: (1) the case involves aberrant and compulsive sexual misconduct; (2) the trial court finds that the evidence is relevant to a charged offense in that the other sexual misconduct is not too remote in time, was allegedly committed upon a person similar to the alleged victim, and was otherwise similar in nature and circumstances to the aberrant and compulsive sexual misconduct at issue in the case; and (3) the trial court finds that the probative value of the evidence outweighs its prejudicial effect.

"(c) When evidence of other crimes, wrongs or acts is admissible. Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . ."

[11] The court explained that, "[t]o the extent that the subsequent sexual activity between the defendant and [E] is not viewed as misconduct, the issue becomes one of relevancy. . . . Evidence that the defendant and [E] had a sexual relationship after the alleged sexual misconduct in this case is probative of the full nature of their relationship and the prior sexual misconduct as well as the reason why [E] did not immediately report the sexual misconduct to the police."

[12] The court stated: "You're now going to be hearing evidence where . . . the witness is going to claim that he had sexual relations with the defendant after he turned sixteen. . . . [The defendant is] not charged with any crimes related to that, but you will be hearing about that.

"It's not being offered to show the bad character of the defendant, it's not being offered to show his propensity to commit crimes. It's being offered to show—it's being offered for a limited purpose; one, to show the complete nature of relationship between this witness and the defendant, and the state's also offering it to show that the defendant had in his mind a common plan to continue to have sexual relations and to have sexual relationships with [E]. I'll give you further instructions on this when I give you my final instructions on the law that applies to this case."

[13] In *State* v. *Ortiz*, 343 Conn. 566, 601–602,      A.3d      (2022), which was decided after the present appeal had been argued, our Supreme Court reaffirmed its holding in *Cutler*. The court explained that, in *Cutler*, it had expressly rejected a claim that the trial court was required to instruct the jury that it must find prior misconduct evidence to be proven by a heightened

standard and emphasized that "it saw *no reason to impose on trial courts a jury instruction that requires jurors to consider the properly admissible prior misconduct evidence at a higher standard.*" (Emphasis in original; internal quotation marks omitted.) Id., 602 n.13.

[14] With respect to evidence of uncharged misconduct, the model jury instructions provide in relevant part: "You may consider such evidence if you believe it and further find that it logically, rationally and conclusively supports the issue[s] for which it is being offered by the state, but only as it may bear on the issue[s] [for which it was admitted]. . . ." Connecticut Criminal Jury Instructions 2.6-5, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited July 11, 2022).

---