******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DANIEL GREER *v.* STATE OF CONNECTICUT
## (AC 46055)

Cradle, Westbrook and DiPentima, Js.

*Syllabus*

The petitioner, who had previously been convicted of four counts of the crime of risk of injury to a child, sought a new trial on the basis of allegedly newly discovered evidence that, if credited by a jury, would support a finding that he was innocent of the charges against him. The petitioner was a rabbi, dean and teacher at a private, Orthodox Jewish school when he sexually abused the victim, E, a student at the school, on various dates in 2002 and 2003, when E was fourteen and fifteen years old. The purported new evidence came to light as a result of testimony given by H, a rabbi and an assistant dean at the school when E attended, during a deposition in a federal civil lawsuit that E had brought against the petitioner. H testified in his deposition that he had had a sexual relationship with the petitioner that started when H himself was a student at the school. H also testified that he was involved in a sexual relationship with the petitioner at the same time that the petitioner was abusing E. The petitioner argued that H's testimony at a new trial would establish with certainty that any sexual misconduct by the petitioner toward E could not have begun until after E's sixteenth birthday. It was an essential element of the crime for which the petitioner had been convicted, risk of injury to a child under the applicable statute (§ 53-21 (a) (2)), that E had been under the age of sixteen at the time of the petitioner's sexual misconduct. The petitioner attached to his petition for a new trial an affidavit sworn by H that stated, to H's knowledge, no acts of misconduct by the petitioner toward E occurred prior to E's sixteenth birthday. At the trial on the petition, H testified, inter alia, that E had called him sometime during the winter of 2020 to 2021 to ask if he had been "really under sixteen at the time." The court denied the petition for a new trial and, in its memorandum of decision, noted that the petitioner's defense strategy had changed since his criminal trial, at which his primary defense had been to attack E's credibility and, by implication, the veracity of his allegations of sexual abuse. The court noted that the petitioner now conceded that some of the alleged sexual acts with E had occurred but only after E had turned sixteen years old. The court stated that H had admitted in his testimony at trial that he had not been present during any sexual acts between the petitioner and E. *Held* that the trial court did not abuse its discretion in determining that the petitioner's purported new evidence, which consisted wholly of H's affidavit and testimony, would not, if introduced at a new trial, likely result in a different outcome, and, accordingly, properly denied the petition for a new trial: contrary to the petitioner's claim, the court gave due consideration to H's testimony regarding E's statement to him because the court specifically addressed that aspect of the new evidence in its memorandum of decision and concluded that the evidence would have done little to undermine the clear evidence in the criminal trial that E was indeed under the age of sixteen when he was sexually assaulted by the petitioner, and the court did not, as suggested by the petitioner, fail to recognize the significance of E's posttrial uncertainty as to how old he was when the sexual assault started, rather, the court simply was unconvinced that a jury hearing the evidence would have reached a different conclusion regarding the petitioner's guilt in light of the totality of the evidence presented, and the court's overall finding that H's testimony lacked credibility, and thus was unlikely to be credited by a jury, applied equally to his testimony regarding the alleged new statement by E; moreover, E's purported statement to H was vague, as E never affirmatively stated that he was sixteen years old or older when the petitioner first abused him, and, at best, his statement indicated possible confusion or doubt on E's part, but it certainly did not amount to a retraction of his trial testimony that helped to establish a timeline from which the jury reasonably could have found that his sexual abuse by the defendant started prior to E

turning sixteen years old, and the only evidence before the court regarding the exact wording and context of E's purported posttrial statement to H was H's testimony, which the petitioner did not present any evidence to corroborate; furthermore, it was axiomatic that this court, in reviewing a trial court's decision on a petition for a new trial based upon newly discovered evidence could not substitute its own assessment as to the proper weight, if any, to be given to any piece of evidence offered or to revisit a trial court's assessment regarding the credibility of a witness, and the trial court provided a number of reasons why H was not a credible witness, including that H admitted that he had evaded service of process in both the federal civil action and the criminal trial, further weakening the persuasiveness of H's testimony and making it less likely that a jury would find his testimony credible.

Argued November 15, 2023—officially released February 27, 2024

*Procedural History*

Petition for a new trial following the petitioner's conviction of four counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of New Haven, where the matter was tried to the court, *Hon. Jon C. Blue*, judge trial referee; judgment denying the petition for a new trial, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*David T. Grudberg*, for the appellant (petitioner).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, and *Seth R. Garbarsky* and *Craig P. Nowak*, supervisory assistant state's attorneys, for the appellee (respondent).

*Opinion*

WESTBROOK, J. The petitioner, Daniel Greer, appeals following the granting of his petition for certification to appeal from the judgment of the trial court denying his petition for a new trial based on newly discovered evidence. On appeal, the petitioner claims that the court improperly concluded that the proffered new evidence likely would not lead to a different result at a new trial because the court (1) failed to give sufficient weight to an alleged posttrial statement by the victim that the petitioner asserts raises doubt regarding an essential element of the crimes underlying his conviction, and (2) erroneously determined that, even if a new trial was granted, it was unlikely that the defense would introduce the new evidence because it was highly prejudicial to the petitioner and, thus, would undermine, rather than aid, his defense. For the reasons that follow, we are not persuaded that the court abused its discretion by denying the petition for a new trial. Accordingly, we affirm the judgment of the court.

This court, in its decision affirming the petitioner's judgment of conviction on direct appeal, set forth the following relevant facts and procedural history underlying the petitioner's criminal case. See *State* v. *Greer*, 213 Conn. App. 757, 759–64, 279 A.3d 268, cert. denied, 345 Conn. 916, 284 A.3d 299 (2022), cert. denied, U.S. , 143 S. Ct. 1061, 215 L. Ed. 2d 282 (2023). "The [petitioner], who is a rabbi, founded Yeshiva of New Haven, Inc. (yeshiva), a private, Orthodox Jewish school, and served as a dean, rabbi, and teacher at the yeshiva. The victim, E,[1] attended the yeshiva for high school, beginning his freshman year in August or September, 2001, when he was thirteen years old. E's birthday is in October, and he turned fourteen years old during his freshman year. . . .

"In 2002, when he was fourteen years old, E returned to the yeshiva for his sophomore year. At some point during the beginning of the school year, the [petitioner] told E to meet him at an apartment adjacent to the school, and E complied. At the apartment, the [petitioner] offered E [snacks] and an alcoholic drink . . . . They proceeded to drink and talk about E's family and his future, and E began to get emotional and his head felt 'fuzzy . . . .' At some point, the [petitioner] touched E's thigh or crotch area and attempted to kiss him on the lips. When E pulled away and asked the [petitioner] what he was doing, the [petitioner] said that '[i]t wasn't a big deal and that this is what he does to his kids.' Nothing further transpired, and E returned to his dormitory.

"After the initial incident at the apartment, E and the [petitioner] met at least once a week during his sophomore year at various locations—often in New Haven or at a motel in Branford—and engaged in oral

or anal sex. During these encounters, the [petitioner] and E often would consume alcohol. E acknowledged that 'the encounters meld together' but was 'very sure' that he and the [petitioner] engaged in anal and oral sex during his sophomore year, during which time he was fourteen and fifteen years old. He testified that, during that period, he and the [petitioner] frequently performed oral sex on each other, that he performed anal sex on the [petitioner] 'many' times, and that, when the [petitioner] attempted to perform anal sex on E, E forced him to stop because it was too painful. After these encounters, E would feel 'shame, guilt, [and] confusion.' At the yeshiva, the [petitioner] gave E preferential treatment and would not yell at him as he regularly did with other students. When E attempted to end the sexual relationship, the [petitioner] stopped giving him preferential treatment and became 'nasty' instead of 'nice and charming  . . . .' The [petitioner] continued to engage in sexual acts with E after he turned sixteen years old in October, 2003.

"After graduating in 2005, E went to an Orthodox yeshiva in Israel to continue his Jewish studies and met S, his future wife  . . . . In 2006, E told S that the [petitioner] had molested him during high school, but he did not provide any details about the abuse. In the summer of 2006, E returned to Connecticut and met the [petitioner] at the Branford motel, where they had their last sexual encounter.

"In December, 2007, E and S were married, and the [petitioner] was one of the witnesses at the ceremony, which is a position of honor. E explained that he gave the [petitioner] this honor because he respected the [petitioner] and 'still felt part of the New Haven community  . . . .' For several years following their marriage, E and S would travel to New Haven for Jewish holidays, where they would share meals with members of the yeshiva community, including the [petitioner]. When E and S had a son in June, 2010, E asked the [petitioner] to hold the baby during the circumcision, which is also a position of honor.

"In 2013, E and S bought a house in New Jersey, and E found a rabbi in that community. Around that time, E stopped traveling to New Haven and communicating with the [petitioner]. At some point before 2016, E disclosed the abuse to his therapist and two family friends, one of whom was working at the yeshiva. In May, 2016, E filed a civil action in federal court against the [petitioner] seeking money damages stemming from the sexual abuse.[2] In August, 2016, while the civil action was pending, E reported the sexual abuse to the New Haven Police Department.

"On July 26, 2017, the [petitioner] was arrested and charged with four counts of sexual assault in the second degree under General Statutes § 53a-71 (a) (1) and four counts of risk of injury to a child under [General Statutes]

§ 53-21 (a) (2). In the operative long form information, the state alleged that the charged conduct occurred when E was fourteen and fifteen years old, 'at the city of New Haven on divers dates between 2002 up to October 27, 2003' . . . . [T]he sexual assault and risk of injury charges were premised on the same conduct—anal intercourse and fellatio.

"The case proceeded to a jury trial, and, at the close of evidence, defense counsel moved for a judgment of acquittal as to the charges of sexual assault in the second degree on the ground that the prosecution was barred by the statute of limitations set forth in § 54-193a because E had not notified a police officer or state's attorney within five years after the commission of the offense. After a brief recess, the state conceded that the sexual assault charges are barred under § 54-193a, and the court granted the motion for a judgment of acquittal as to the four counts of sexual assault in the second degree . . . . Thereafter, the state filed a new information limited to the four counts of risk of injury to a child, and the jury found the [petitioner] guilty of those charges."[3] (Footnote added; footnote in original; footnotes omitted.) Id., 759–63. The court thereafter sentenced the petitioner to twenty years of incarceration, execution suspended after twelve years, followed by ten years of probation. Id., 764.

On November 12, 2021, the petitioner commenced the underlying action pursuant to Practice Book § 42-55 and General Statutes § 52-270.[4] In the operative amended petition for a new trial, filed on September 28, 2022,[5] the petitioner argued that he was entitled to a new trial on the basis of newly discovered evidence. According to the petitioner, the new evidence, if credited by a jury, would support a finding that the petitioner "was factually innocent of the charges against him."

The purported new evidence came to light as a result of testimony given by another rabbi, Aviad Hack, during a deposition in the federal civil lawsuit. Hack had "deep familiarity" with both E and the petitioner. Hack had been the assistant dean for the yeshiva at the time E attended, and, according to Hack, at the same time that the petitioner had been abusing E, the petitioner also was involved in a sexual relationship with Hack that had started when Hack himself was a student at the yeshiva. The petitioner argued that Hack's testimony at a new trial would establish "with certainty" that any sexual misconduct by the petitioner toward E could not have begun until after E's sixteenth birthday. An affidavit sworn by Hack and dated October 29, 2021, was attached to the original petition for a new trial. In this affidavit, Hack averred that he had given deposition testimony in E's federal civil action but that he later evaded service of process in both the federal action and the state court criminal trial. He further stated in his affidavit that, "*to my knowledge*, no acts of miscon-

duct by [the petitioner] toward [E] occurred *prior* to [E's] 16th birthday. The first such act, *to my memory*, occurred in or about January, 2004." (Emphasis added.) It was an essential element of the risk of injury to a child counts of which the petitioner was convicted that the child be "*under* the age of sixteen years . . . ." (Emphasis added.) General Statutes § 53-21 (a) (2).[6] It is undisputed that E was sixteen years old in January, 2004.

The court, *Hon. Jon C. Blue*, judge trial referee, conducted a trial on the petition for a new trial on July 20 and September 23, 2022. In support of his petition, the petitioner presented testimony from himself and Hack, who testified, inter alia, regarding his civil deposition testimony and the factual basis for the statements in his affidavit regarding E's age. The respondent, the State of Connecticut, called no witnesses of its own. Following the trial, the parties submitted simultaneous post-trial briefs, and the petitioner thereafter submitted a reply brief. The court heard additional postevidence arguments on November 9, 2022.

On November 17, 2022, the court issued its second corrected memorandum of decision in which it denied the amended petition for a new trial. The court first noted that the petitioner's defense strategy had changed since his criminal trial at which his primary defense was to attack E's credibility and thus, by implication, the veracity of his allegations of sexual abuse. The court also noted that the petitioner was now conceding that some of the alleged sexual acts occurred, but only after E had turned sixteen. The court next turned to a discussion of the petitioner's proffered new evidence, which the court found less than compelling for several reasons. The court explained in part: "The evidence submitted to establish [the petitioner's] new [theory of defense] is the testimony of [Hack and his affidavit]. . . . Hack's affidavit is cautiously worded—the phrases 'to my knowledge' and 'to my memory' allow for a great deal of wiggle room. The obvious question that arises is 'How does he know?' His testimony on the stand failed to answer this question satisfactorily.

"Hack admitted in his testimony that he had not been present during any sexual acts between [the petitioner] and E. He additionally admitted that he had not been present with E twenty-four hours a day, seven days a week during the time in question. It is clear that all manner of sexual misconduct could have occurred between [the petitioner] and E prior to E's sixteenth birthday that Hack simply would not have observed or known of.

"Hack's 'knowledge' turns out to be a series of inferences, some of them quite thin. He reasoned that since [the petitioner] had not sexually abused him prior to his sixteenth birthday, the same pattern would necessarily apply to E. On cross-examination, however, Hack

admitted that [the petitioner] had 'groomed' him prior to his sixteenth birthday. In addition, [the petitioner] first abused Hack in 1992, whereas E testified [at the criminal trial] that [the petitioner] had first abused him . . . a decade later, [and] so it is not unreasonable to conclude that [the petitioner's] seduction timetable may have altered in the intervening years.

"Hack testified that one location at which he and [the petitioner] had (adult) sexual relations was 139 West Park. On one occasion, apparently in late fall 2003, [the petitioner] told Hack, 'I was just here with [E].' . . . Assuming this to be true, this statement hardly establishes that [the petitioner] had been there with E for the first time, or even were that to be the case, that [the petitioner] and E had not previously engaged in sexual acts in a variety of other locations.

"Hack's additional theory is that [the petitioner] could not have engaged in sexual acts with E prior to October 27, 2003, because [the petitioner] 'detested' E until later in the academic year. The flaw in this theory is obvious. [The petitioner's] relationship with E was not a relationship based on love. It was a relationship based on predation. [The petitioner] may not have liked E but nevertheless found him to be a convenient object of sexual desire.

"Hack additionally testified that E called him during the winter of 2020–2021 and asked Hack whether [E] was 'really under sixteen at the time.' This purported statement does not amount to a retraction of E's clear evidence in the criminal trial that E was indeed under the age of sixteen when he was sexually assaulted by [the petitioner].

"In addition to obvious logical issues with his theories, Hack turns out to have credibility issues as well. He admits that he repeatedly evaded service of process in both the federal and state actions. His testimony that coming forth at this late date was the 'right' thing to do rests uneasily with his deliberate failure to accept service of process on occasions when coming forth would have been yet more 'right.'

"Beyond this, on cross-examination, Hack admitted to a remarkable series of events. Sometime after the federal court awarded E over $21 million in damages against [the petitioner] for sexual abuse, [the petitioner] brought an action against Hack in a rabbinical court, called a Din Torah, alleging that Hack was liable to [the petitioner] for the full amount of the judgment. The last hearing in the rabbinical court was in the summer of 2021. Although Hack's testimony leaves the exact litigational details murky . . . he and [the petitioner] reached a settlement in the fall of 2021 in which Hack agreed to sign an affidavit and appear in court to give his testimony in the present case." In short, the court found significant issues regarding Hack's credibility

that further weakened the persuasiveness of his testimony.

For purposes of its analysis, the court assumed without deciding that the petitioner had established that the evidence he proffered in support of his petition for a new trial was, in fact, newly discovered; that the evidence would be material in a new trial; and that it was not merely cumulative of other evidence. The court concluded, however, that the petitioner "assuredly [had] not" established that the proffered new evidence would probably produce a different result in a new trial. It was on this basis that the court denied the petition for a new trial.

The court reasoned as follows: "After a careful consideration of all of the evidence, the court is not persuaded that a jury would find [the petitioner] not guilty after hearing the new evidence submitted in the present case. If anything, the new evidence, if submitted to a jury, would seal [the petitioner's] doom.

"It is one thing to claim, as [the petitioner's] able counsel did in the original trial, that E's testimony concerning the [petitioner's] sexual abuse was not credible. The obvious implication of counsel's argument was that the alleged acts of sexual abuse had not been proven. It is another thing to claim, as Hack testified in the present case, that the acts of sexual abuse did occur, but at a slightly later time.

"Beyond this, if the jury were to hear that [the petitioner] had previously preyed upon Hack, 'grooming' him prior to his sixteenth birthday, the likelihood of conviction would approach a near certainty. Defense attorneys ordinarily attempt to exclude evidence of previous sexual misconduct. It is the rare defense attorney who affirmatively attempts to introduce such evidence.

"For all these reasons, it is exceedingly unlikely that Hack would even be called as a witness by the defense in a new trial. If anything, it is the state that would attempt to introduce such evidence." (Emphasis omitted.) The court denied the petition, and this appeal followed.

We begin our discussion of the petitioner's claims by setting forth governing legal principles, including our standard of review. "Pursuant to § 52-270, a convicted criminal defendant may petition the Superior Court for a new trial on the basis of newly discovered evidence. See Practice Book § 42-55. A trial court's decision on that ground is governed by the standard set forth in *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987), and further refined in *Shabazz* v. *State*, 259 Conn. 811, 827–28, 792 A.2d 797 (2002). Under *Asherman*, a court is justified in granting a petition for a new trial [if] the petitioner demonstrates that the evidence offered in support thereof: (1) is newly discovered such that it could not have been discovered previously

despite the exercise of due diligence; (2) would be material to the issues on a new trial; (3) is not cumulative; and (4) is likely to produce a different result in the event of a new trial." (Internal quotation marks omitted.) *Carter* v. *State*, 159 Conn. App. 209, 222, 122 A.3d 720, cert. denied, 319 Conn. 930, 125 A.3d 204 (2015). "This strict standard is meant to effectuate the underlying equitable principle that once a judgment is rendered it is to be considered final, and should not be disturbed by posttrial motions except for a compelling reason." (Internal quotation marks omitted.) *Asherman* v. *State*, supra, 202 Conn. 434.

In *Shabazz* v. *State*, supra, 259 Conn. 811, our Supreme Court explained that "trial courts should utilize the following approach when applying the fourth element of the *Asherman* test. The trial court must always consider the newly discovered evidence in the context of the evidence presented in the original trial. In so doing, it must determine, first, that the evidence passes a minimum credibility threshold. That is, if, in the trial court's opinion, the newly discovered evidence simply is not credible, it may legitimately determine that, even if presented to a new jury in a second trial, it probably would not yield a different result and may deny the petition on that basis. . . . If, however, the trial court determines that the evidence is sufficiently credible so that, if a second jury were to consider it together with all of the original trial evidence, it probably would yield a different result or otherwise avoid an injustice, the fourth element of the *Asherman* test would be satisfied." (Citation omitted.) Id., 827–28.

"[T]he petitioner has the burden of alleging and proving facts [that] would, in conformity with our settled equitable construction of the statutes, entitle him to a new trial on the grounds claimed . . . ." (Internal quotation marks omitted.) *Carter* v. *State*, supra, 159 Conn. App. 226. "It is within the discretion of the trial court to determine, upon examination of all the evidence, whether the petitioner has established substantial grounds for a new trial, and the judgment of the trial court will be set aside on appeal only if it reflects a clear abuse of discretion." *Asherman* v. *State*, supra, 202 Conn. 434.

We now turn to the petitioner's claims on appeal. The petitioner claims that, in denying his petition for a new trial premised on newly discovered evidence, the court improperly concluded that the purported new evidence would not lead to a different result if a new trial was granted because the court (1) failed to give sufficient weight to the recent statements by E to Hack that, if credited, raised doubt regarding E's age when the sexual abuse underlying the petitioner's conviction occurred, and (2) erroneously found that it was not likely that a defense attorney would introduce Hack's testimony at a new trial if granted because the testimony

would be highly prejudicial to the petitioner and likely would undermine, rather than aid, his defense. We conclude that the court did not abuse its discretion in concluding that the proffered new evidence was not likely to produce a different result in the event of a new trial.[7]

"The burden of proving the probability of a different result is upon the [petitioner], and in determining that issue the trial court exercises a discretion [that] cannot be set aside unless its discretionary power has been abused.[8] . . . The petitioner must overcome a high hurdle to establish such an abuse of discretion. To meet the fourth element of *Asherman*, [t]he [petitioner] must persuade the court that the new evidence he submits will *probably*, not merely possibly, result in a different verdict at a new trial . . . . It is not sufficient for him to bring in new evidence from which a jury *could* find him not guilty—it must be evidence [that] persuades the judge that a jury *would* find him not guilty." (Citations omitted; emphasis in original; footnote added; internal quotation marks omitted.) *Mitchell* v. *State*, 338 Conn. 66, 97, 257 A.3d 259 (2021).

The petitioner asserts on appeal that the court failed to give sufficient weight to that portion of Hack's testimony in which he recounted that E recently made statements to Hack regarding whether E in fact was under sixteen years old when the sexual abuse underlying the petitioner's conviction occurred. The petitioner argues that, if credited by a jury, these statements likely would raise reasonable doubt regarding the petitioner's guilt.

There can be no doubt that the court gave due consideration to Hack's testimony regarding E's statement because the court specifically addressed that aspect of the new evidence in its memorandum of decision. The court concluded that this evidence would have done little to undermine the "clear evidence in the criminal trial that E was indeed under the age of sixteen when he was sexually assaulted by [the petitioner]." In other words, the court did not, as suggested by the petitioner, fail to recognize the significance of E's posttrial uncertainty, it simply was unconvinced that a jury hearing this evidence would have reached a different conclusion regarding the petitioner's guilt in light of the totality of the evidence presented. The court's overall finding that Hack's testimony lacked credibility and, thus, was unlikely to be credited by a jury, applied equally to his testimony regarding the alleged new statements by E.

Moreover, we agree with the trial court's assessment that E's purported statement to Hack was vague. According to Hack's testimony, E never affirmatively stated that he was sixteen years old or older when the petitioner first abused him. At best, his statement indicated possible confusion or doubt on E's part, but it certainly did not amount to a retraction of his trial testimony that helped to establish a timeline from which

the jury reasonably could have found that his sexual abuse by the defendant started prior to E turning sixteen. As the petitioner recognizes, E's testimony during the criminal trial contained statements suggesting that he was not able to discern precise dates and details of every sexual encounter with the petitioner; nonetheless, he testified that he was "very sure" that the sexual contact at issue had occurred in 2002 and 2003, and the jury presumably credited that portion of his testimony. The only evidence before the trial court regarding the exact wording and context of E's purported posttrial statement to Hack was Hack's testimony. The petitioner, who had the burden of proof with respect to the petition for new trial, did not present any evidence corroborating Hack's testimony.[9] See *Skakel* v. *State*, 295 Conn. 447, 484–85, 991 A.2d 414 (2010) (it was proper for court hearing petition for new trial to consider lack of corroboration when applying forth prong of *Asherman* test). Finally, it is axiomatic that this court, in reviewing a court's decision on a petition for new trial based upon newly discovered evidence, cannot substitute its own assessment as to the proper weight, if any, to be given any piece of evidence offered; see *Jones* v. *State*, 328 Conn. 84, 94, 177 A.3d 534 (2018); or revisit a trial court's assessment regarding the credibility of a witness. See *State* v. *Lawrence*, 282 Conn. 141, 156–57, 920 A.2d 236 (2007) (appellate courts defer to trial court's assessments concerning credibility and will not retry such credibility determinations on appeal).

In the present case, Judge Blue made express statements questioning the credibility of Hack and his testimony. The court found that Hack's use of the phrases "to my knowledge" and "to my memory" in his affidavit coupled with the fact that he later admitted in his testimony at the hearing on the petition for a new trial that he could not account for E's whereabouts at all times during the relevant period made it possible that "all manner of sexual misconduct could have occurred between [the petitioner] and E prior to E's sixteenth birthday that Hack simply would not have observed or known of."

More importantly, in addition to noting a number of unreasonable inferences that Hack advanced in support of his statement that E could not have been under the age of sixteen at the time he was first abused by the petitioner, the court provided a number of reasons why Hack was not a credible witness. First, Hack admitted that he had acted to evade service of process in both the federal civil action and the state criminal action. He came forward with his current affidavit and testimony only after reaching a settlement agreement with the petitioner to resolve the action that the petitioner had brought against him in rabbinical court seeking to hold him liable for the $21 million federal civil judgment. In short, the court found significant issues regarding

Hack's credibility, further weakening the persuasiveness of his testimony and making it less likely that a jury would find his testimony credible.

Although the petitioner makes various arguments as to why a court might reach a different conclusion regarding Hack's credibility, as previously stated, this court will not revisit a court's credibility determinations. *State* v. *Lawrence*, supra, 282 Conn. 157. "[I]t is solely within the discretion of the trial court to determine, upon examination of both the newly discovered evidence and that previously produced at trial, whether the petitioner has established substantial grounds for a new trial." *Shabazz* v. *State*, supra, 259 Conn. 821–22. Having reviewed the record and the arguments of the parties, we conclude that the court did not abuse its discretion in determining that the petitioner's purported new evidence, which consisted wholly of Hack's affidavit and testimony, would not, if introduced at a new trial, likely result in a different outcome.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e." *State* v. *Greer*, supra, 213 Conn. App. 759 n.2.

[2] As indicated by the trial court in its decision on the petition for a new trial, the petitioner eventually was ordered in the federal civil lawsuit to pay $21,749,041 in damages for his sexual abuse of E.

[3] "The [petitioner] filed postverdict motions for a judgment of acquittal and a new trial. . . . [T]he [petitioner] claimed, inter alia, that the same limitation period applicable to sexual assault in the second degree should apply to the risk of injury charges because all of the charges were based on the same conduct. After hearing argument, the court rejected the [petitioner's] statute of limitations claim and denied the motions." (Footnote omitted.) *State* v. *Greer*, supra, 213 Conn. App. 763–64. On direct appeal, this court affirmed the trial court's ruling regarding the statute of limitations claim and rejected a claim that the court improperly had instructed the jury regarding uncharged misconduct evidence. Id., 775, 786.

[4] Practice Book § 42-55 provides: "A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with General Statutes § 52-270. The judicial authority may grant the petition even though an appeal is pending."

General Statutes § 52-270 (a) provides: "The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the Superior Court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action."

[5] The petitioner initially proceeded at trial on the original petition, but the court later permitted him to amend the petition in part to conform with the evidence that had thus far been presented at trial.

[6] General Statutes § 53-21 provides in relevant part: "(a) Any person who . . . (2) has contact with the intimate parts . . . of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[7] Because we conclude that the court properly determined that the proffered new evidence, if presented to a jury, would not likely produce a

different result, it is unnecessary for us to review the court's alternative finding that, even if it granted a new trial, it was unlikely that defense counsel would introduce Hack's testimony because it would be highly prejudicial to the petitioner and significantly increase rather than decrease his likelihood of conviction.

[8] In *Jones* v. *State*, 328 Conn. 84, 87, 177 A.3d 534 (2018), our Supreme Court recognized an exception in which appellate courts would exercise de novo review if the petition for a new trial was decided by a judge who did not preside over the original trial and no fact finding was necessary because both parties agreed that the new evidence was fully credible. Here, although Judge Blue did not preside over the original trial, there was no agreement by the parties that the new evidence was fully credible; to the contrary, Hack's credibility and, by implication, the credibility of his testimony was in dispute. Accordingly, it is appropriate to apply the abuse of discretion standard.

[9] The petitioner argues that the state could have called E to testify at the hearing on the petition for a new trial about his statements if it wished to try and contradict Hack's testimony. It is not the state's burden, however, to disprove the credibility of the evidence offered in support of a petition for new trial. The burden of persuasion is on the petitioner, and a petitioner's failure to demonstrate the credibility of the evidence proffered is a reasonable ground on which a court may deny a petition for new trial. See *Shabazz* v. *State*, supra, 259 Conn. 827.