******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* WILLIAM G.*
## (AC 46807)

Alvord, Westbrook and Pellegrino, Js.

*Syllabus*

Convicted, after a jury trial, of sexual assault in the first degree and sexual assault in the second degree, the defendant appealed to this court. He claimed, inter alia, that the trial court improperly instructed the jury not to consider the victim's delayed reporting of the sexual assault when evaluating her credibility. *Held*:

The trial court improperly instructed the jury that it should not consider the victim's delayed reporting when evaluating her credibility because, although the court's instruction was proper at the time that it was given, the Supreme Court's subsequent decision in *State* v. *Adam P.* (351 Conn. 213), which was released while the defendant's appeal was pending before this court, reinstated the standard, articulated in *State* v. *Troupe*, (237 Conn. 284), that a defendant in a sexual assault case is entitled to an instruction that "any delay by the victim in reporting the incident is a matter for the jury to consider in evaluating the weight of the victim's testimony."

The defendant met his burden of demonstrating that the trial court's improper jury instruction regarding the victim's delayed reporting was harmful and that he was entitled to a new trial because, as the verdict turned on the victim's credibility and the defendant's theory of defense related the victim's delayed reporting to her credibility, it was reasonably probable that the jury was misled into thinking it could not consider the delay in assessing the victim's credibility and that it could therefore not consider the defendant's principal theory of defense.

The trial court properly instructed the jury regarding evidence of certain uncharged misconduct, as, pursuant to the Supreme Court's decision in *State* v. *Cutler* (293 Conn. 303), the trial court was not required to instruct the jury that, before it may consider such evidence, it must find that the state proved the uncharged misconduct by a preponderance of the evidence.

Argued March 11—officially released April 29, 2025

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree and

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

sexual assault in the second degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Dayton, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Reversed*; *new trial*.

*Erica A. Barber*, assistant public defender, with whom, on the brief, were *Kendall Kirk*, law student intern, and *Bron Tamulis*, law student intern, for the appellant (defendant).

*Meryl R. Gersz*, assistant state's attorney, with whom, on the brief, was *Joseph T. Corradino*, state's attorney, for the appellee (state).

*Opinion*

WESTBROOK, J. The defendant, William G., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (4). On appeal, the defendant claims that the court improperly (1) instructed the jury not to consider that the victim delayed reporting the sexual assault in evaluating her credibility, and (2) denied his request to instruct the jury that, in evaluating evidence of uncharged misconduct offered by the state to prove the defendant's propensity to commit the charged crimes, it must first determine whether the state proved that the defendant had engaged in such conduct by a preponderance of the evidence. We agree that the court's delayed reporting instruction was improper and harmful, and, accordingly, we reverse the judgment of the court.

The following facts, which reasonably could have been found by the jury, and procedural history are relevant to this appeal. In 2012, the victim's mother married the defendant, and he became the victim's stepfather.

The defendant lived with the victim's mother at her house in West Haven along with the victim's sisters, E and S. The victim lived with her paternal grandparents at their house in Trumbull, along with her father and her two brothers. She visited her mother and sisters at her mother's house almost every weekend.

Beginning in 2016, when the victim was fourteen years old, the defendant made comments that made her uncomfortable. He told her that she should shave her "privates because women should be shaved" and that she should let him help her shave. He also told her that he always left the bathroom door unlocked when he was showering, and he asked her to leave it unlocked so that they could each enter the bathroom while the other was showering. Over time, the defendant's comments became increasingly persistent. He showed the victim photos of himself, her mother, and another woman, nude and engaging in sexual acts. Eventually, the victim stopped visiting her mother and sisters as often because the defendant's behavior made her uncomfortable.

On February 17, 2018, when the victim was sixteen years old, she visited her sisters at her mother's house. She did not plan on staying overnight, but the defendant said he would take her home the next day. While the victim was at her mother's house, the defendant asked to shave her and showed her inappropriate photos. That night, the mother slept on the couch while the victim slept in her mother's bed with the defendant. When the victim woke up in the morning, the defendant told her that she was a heavy sleeper because he had been "wiggling around" and she had not woken up.

On the night of February 18, 2018, the victim got in the defendant's vehicle with him so that he could drive her home. During the drive, the defendant touched the victim's legs and lap, and he put her hands on his penis

over his clothes. The victim pulled her hands away, but he put them back on his lap at least three times. When the defendant's vehicle approached the road to the victim's house, he drove by, turned onto another street, and continued driving. As he drove, he pulled his pants down, exposing his penis, and put the victim's hands on his penis. Then the defendant turned onto Dayton Road and pulled into a gravel parking lot by a park. In the parking lot, the defendant put his hands on the back of the victim's head and forced her to perform oral sex on him. When the victim began crying, the defendant let her sit up, pulled his pants up, and said, "you're not going to go tell them I raped you, are you?" Then the defendant took the victim home, went in the house, said hello to her family, shook her father's hand, and left.

The next day, the victim went to school but skipped all her classes. At school, she told her cousin that the defendant assaulted her the night before. The victim did not, however, tell her cousin any details of the incident, and she asked her cousin not to tell anyone because she was embarrassed. The victim thereafter stopped visiting her mother's house.

On March 25, 2018, S visited the victim in Trumbull. While the two worked on a school project in the victim's bedroom, the victim became worried that the defendant was doing the same thing to S that he did to her, so she told S about the comments the defendant made to her and the photos he showed her. Then the victim's brother R walked by, and the victim called him into her room and told him about the defendant's behavior as well. The victim did not, however, tell S or R that the defendant forced her to perform oral sex on him on February 18, 2018. The three of them decided to tell their grandmother, their father, and their sister E, who were all present at the house. The victim told her family members about the defendant's comments and photos and the touching that took place in the defendant's

vehicle on February 18, 2018. She did not tell them about the forced oral sex because her family members were "freaking out really bad" and she got overwhelmed.

The victim's family members immediately called the Trumbull Police Department and reported the defendant for sexual assault and inappropriate conduct. The police department dispatched Officer Sean McClinch to the victim's father's house to investigate. When McClinch arrived, he spoke with the victim, her father, and S. He took a sworn statement from the victim, who disclosed only those details that she had told her family members. McClinch called the victim's mother to discuss a safety plan for where the victim and her sisters would stay. He also notified the Department of Children and Families and the detective bureau for further investigation.

On March 26, 2018, the victim spoke with Detective Daniel Wheeler. The next day, on March 27, 2018, she spoke with a school psychologist. Later that day, Kevin Sheehy, a licensed clinical social worker, conducted a recorded forensic interview of the victim, which he informed her was a very important interview. During each of these discussions, the victim did not disclose that the defendant parked in a lot on Dayton Road and forced her to perform oral sex on him.

On April 4, 2018, the victim told her family for the first time that the defendant forced her to perform oral sex on him. She did not, however, tell them that he parked in the gravel lot of Dayton Road or what he said to her afterward. The next day, Wheeler visited the victim at her house to inform her that someone had told him about the forced oral sex that occurred on February 18, 2018, and to question her about the incident. At that time, the victim told Wheeler that the defendant parked in the gravel lot on Dayton Road,

forced her to perform oral sex, and then asked if she was going to report that he raped her.

On April 6, 2018, Wheeler and other members of the Trumbull Police Department arrested the defendant. After waiving his *Miranda*[1] rights, the defendant told the police that when he drove the victim home on February 18, 2018, he missed the turn onto her road because it was snowing, and he decided to drive around the block instead of turning around in the street. He denied making inappropriate comments to the victim or inappropriately touching her, and he denied parking in the lot on Dayton Road on February 18, 2018. The state subsequently charged the defendant with sexual assault in the first degree in violation of § 53a-70 and sexual assault in the third degree in violation of General Statutes § 53a-72a.

During the police investigation into the victim's allegations, Wheeler conducted a canvass of the area around the gravel lot on Dayton Road, where the victim alleged that the defendant had forced her to perform oral sex on him. Wheeler checked the neighborhood for video surveillance of the roads and witnesses who saw the defendant's vehicle in the area on February 18, 2018, but he found no video footage or witnesses.

On March 10, 2023, the state filed a substitute information charging the defendant with two counts. Count one charged him with sexual assault in the first degree in violation of § 53a-70 (a) (1), alleging that he compelled the victim to engage in sexual intercourse, as defined by General Statutes § 53a-65 (2), by the use of force. Count two charged the defendant with sexual assault in the second degree in violation of § 53a-71 (a) (4), alleging that the defendant engaged in sexual intercourse with the victim, the victim was less than

---

[1] See *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

eighteen years of age, and the defendant was the victim's guardian or otherwise responsible for the general supervision of her welfare.

The case was tried to a jury on March 13, 15 and 16, 2023. The state presented the testimony of McClinch, the victim, Wheeler, and two propensity witnesses, L and J. J testified that, when she was eleven years old, she was living in Michigan with her aunt and the defendant, who is her cousin. According to J, when she "started hitting puberty," the defendant, who was in his late twenties, began telling J that she should let him groom her pubic hair. She also indicated that, on one occasion, the defendant engaged in "inappropriate behavior and touching" of her friend, L. L testified that, in 2003, when she was thirteen years old, she was at J's house when the defendant, who was twenty-six years old, kissed her. When L visited J's home a couple of weeks later, the defendant asked her to watch a movie with him. During the movie, the defendant touched L inappropriately and performed oral sex on her. He put her hands on his penis and "wanted to go further," but L excused herself to go to the bathroom and then went to J's room and locked the door. L reported the incident to the police and subsequently identified the defendant in a photographic array, but she never heard from the police again after that.

The state also presented the expert testimony of Danielle Williams, a forensic interviewer, to explain that victims of sexual assault may delay reporting because of, inter alia, shame, embarrassment, or proximity of the abuser to the victim's family. With respect to children's disclosure of sexual assault, she explained: children "might deny anything happened"; they "might tentatively tell somebody"; and "there's the active stage, which is where the child is ready to talk about it." She also described typical grooming behavior by an abuser, including, inter alia, making inappropriate comments,

showing a child pornographic photos, and restricting a child's privacy.

On March 15, 2023, the court, *Dayton, J.*, discussed its proposed instructions with the parties outside the presence of the jury. Specifically, the court noted that it intended to deliver a delayed reporting instruction based on instruction 7.2-1 of the Connecticut model criminal jury instructions.[2] Defense counsel orally objected to the delayed reporting instruction and filed a written objection with the court. The court, however, determined that its proposed delayed reporting instruction was appropriate pursuant to our Supreme Court's holding in *State* v. *Daniel W. E.*, 322 Conn. 593, 142 A.3d 265 (2016).

On March 16, 2023, the prosecutor and defense counsel presented their closing arguments, and the court charged the jury. Specifically, the court instructed the jury regarding delayed reporting in accordance with *State* v. *Daniel W. E.*, supra, 322 Conn. 593, as follows: "There was evidence in this case that [the victim] delayed in making an official report of the alleged sexual assault. There are many reasons why sexual assault victims may delay in officially reporting the offense and to the extent the [victim] delayed in reporting the

---

[2] As noted by our Supreme Court in *State* v. *Adam P.*, 351 Conn. 213, 330 A.3d 73 (2025), instruction 7.2-1 of the Connecticut model criminal jury instructions previously provided that where no constancy of accusation witness testified, but there was a delay in officially reporting the offense, the trial court should instruct the jury that "[t]here was evidence in this case that the complainant delayed in making an official report of the alleged sexual assault. There are many reasons why sexual assault victims may delay in officially reporting the offense, and to the extent the complainant delayed in reporting the alleged offense here, the delay should not be considered by you in evaluating (his or her) credibility." (Internal quotation marks omitted.) Id., 218 n.1. The instruction was revised on February 26, 2025, after the verdict in this case, in accordance with our Supreme Court's holding in *Adam P.* See Connecticut Criminal Jury Instructions 7.2-1, available at https://jud.ct.gov/JI/Criminal/Criminal.pdf (last visited April 16, 2025).

alleged offenses here, the delay should not be considered by you in evaluating her credibility."

The jury subsequently found the defendant guilty on both counts of the substitute information. The court rendered a judgment of conviction based on the jury's verdict and sentenced the defendant to a total effective term of thirty years of incarceration, execution suspended after fourteen years, two years and nine months of which was a mandatory minimum, followed by thirty-five years of probation. This appeal followed.

On February 11, 2025, while the defendant's appeal was pending, our Supreme Court issued its decision in *State* v. *Adam P.*, 351 Conn. 213, 330 A.3d 73 (2025), in which the court overruled the modification of the constancy of accusation doctrine established in *Daniel W. E.* and returned to the standards previously articulated in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996). See *State* v. *Adam P.*, supra, 220, 226. On February 25, 2025, prior to oral argument, we ordered, sua sponte, the parties to file supplemental briefing addressing the effect of *Adam P.*, if any, on this appeal. On March 4, 2025, both parties filed supplemental briefs in accordance with our order.

I

The defendant first claims that the court improperly instructed the jury regarding the delayed reporting by the victim. In their supplemental briefs, neither party disputes that our Supreme Court's decision in *Adam P.* renders the trial court's delayed reporting instruction improper. The parties dispute, however, whether the court's improper instruction was harmful such that the defendant is entitled to a new trial. We agree with the defendant that the court's instruction was both improper and harmful error and, accordingly, that a new trial is warranted.

We begin with a brief overview of the constancy of accusation doctrine as it relates to this appeal. "Connecticut common law allowed the state in a sexual assault case to offer constancy evidence, which generally included proof that the victim had disclosed the sexual assault to third parties prior to making a formal complaint to authorities. . . . The law permitted the court to admit this evidence to negate the inference a fact finder might draw, namely, that a complainant was fabricating her accusation if she failed to officially report the alleged sexual abuse promptly after the incident. . . .

"In *Troupe*, [our Supreme Court] . . . narrowed the admissibility of constancy evidence . . . . Specifically, [it] held that a constancy witness may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes." (Citations omitted; internal quotation marks omitted.) *State* v. *Adam P.*, supra, 351 Conn. 221. Additionally, the court in *Troupe* held that "the defendant is entitled to an instruction that any delay by the victim in reporting the incident is a matter for the jury to consider in evaluating the weight of the victim's testimony." *State* v. *Troupe*, supra, 237 Conn. 305.

Subsequently, in *Daniel W. E.*, our Supreme Court modified the constancy of accusation doctrine as it related to the issue of delayed reporting. The court held that "the victim in a sexual assault case should continue to be allowed to testify on direct examination regarding the facts of the sexual assault and the identity of the

person or persons to whom the incident was reported. . . . Thereafter, if defense counsel challenges the victim's credibility by inquiring, for example, on cross-examination as to any out-of-court complaints or delayed reporting, the state will be permitted to call constancy of accusation witnesses subject to the limitations established in *Troupe* . . . . If defense counsel does not challenge the victim's credibility in any fashion on these points, the trial court shall not permit the state to introduce constancy testimony but, rather, shall instruct the jury that there are many reasons why sexual assault victims may delay in officially reporting the offense, and, *to the extent the victim delayed in reporting the offense, the delay should not be considered by the jury in evaluating the victim's credibility.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Adam P.*, supra, 351 Conn. 222–23.

Recently, in *Adam P.*, our Supreme Court revisited the constancy of accusation doctrine as it relates to the issues of delayed reporting and victim credibility. It determined that the doctrine, as modified by *Daniel W. E.*, "unduly confuses what a jury may and may not consider when assessing a victim's credibility in a sexual assault case, and conflicts with aspects of *Troupe* that [the court] left untouched." Id., 224. The court, therefore, overruled the modifications established in *Daniel W. E.* and reinstated the constancy of accusation standards previously articulated in *Troupe.* Id., 229.

In the present case, the court instructed the jury that it should not consider the victim's delayed reporting when evaluating her credibility, in accordance with the holding in *Daniel W. E.* Although the court's instruction was proper at the time that it was given, our Supreme Court, in *Adam P.*, subsequently overruled *Daniel W. E.*, deciding that the instruction is improper.[3] Due to

[3] Our Supreme Court has stated that "a rule enunciated in a case presumptively applies retroactively to pending cases." (Internal quotation marks omitted.) *State* v. *Elias G.*, 302 Conn. 39, 45, 23 A.3d 718 (2011). Subsequently,

this change in the law, we conclude that the court improperly instructed the jury in this regard. We must next address whether the improper instruction was harmful, thereby entitling the defendant to a new trial. See id., 230. Because this issue "presents a question of law," our review is plenary. Id.

"To determine whether the defendant is entitled to a new trial because of an erroneous jury instruction, we review the entire charge to determine if, taken as a whole, the charge adequately guided the jury to a correct verdict. . . . In appeals not involving a constitutional question [we] must determine whether it is reasonably probable that the jury [was] misled . . . . [I]n appeals involving a constitutional question, [however, the standard is] whether it is reasonably possible that the jury [was] misled. . . . If the instruction involves a constitutional violation, the state bears the burden of demonstrating harmlessness, whereas, if the instruction does not, the defendant bears the burden of demonstrating harm. . . . Instructional errors violate due process—and, therefore, are of constitutional dimension—when they confuse the burden of proof, the presumption of innocence, or one of the essential elements of the crime." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 230–31.

In *Adam P.*, the court determined that an instruction given in accordance with *Daniel W. E.*, although

our Supreme Court explained: "This court has established the general rule that judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending . . . . We have clarified, however, that [c]omplete retroactive effect is most appropriate in cases that announce a new constitutional rule or a new judicial interpretation of a criminal statute." (Citation omitted; internal quotation marks omitted.) *State* v. *Turner*, 334 Conn. 660, 677 n.6, 224 A.3d 129 (2020).

In the present case, the defendant challenged the trial court's delayed reporting instruction before the trial court and on appeal, and the Supreme Court issued its decision in *Adam P.* while the case was pending direct review. As neither party contends that the general rule does not apply in the present case, we presume that *Adam P.* applies retroactively.

improper, is not an error of constitutional dimension. See id., 231–32. It reasoned as follows: "Credibility is often particularly important in sexual assault cases, and victims' delayed reporting may be relevant to their credibility. In fact, what to make of delay is often a point of dispute between the parties in sexual abuse cases, with one side positing that delay is a symptom of a victim's trauma, and the other claiming that it is consistent with a motivation to fabricate accusations. Even so, neither delay nor credibility is an element of the charged offenses; nor do they shift the state's burden of proof to the defendant." Id., 232. Because, pursuant to the court's holding in *Adam P.*, the instructional error at issue in this case does not involve a constitutional violation, the defendant bears the burden of demonstrating harm.

To establish that the improper instruction was harmful, the defendant must demonstrate that it is "reasonably probable—meaning more probable than not—that the instructional error misled the jury in arriving at its verdict, therefore requiring reversal. . . . This determination is necessarily fact intensive, requiring that we look to the instructions provided, the parties' theories of the case, and the larger record, all in their entireties, to ensure that injustice is not done to either party under the established rules of law. . . . We evaluate the harmfulness of a nonconstitutional error on the record as a whole. . . . An improper instruction is not automatically harmful merely because it adversely affects a defense. . . . The defendant's claim of harm requires that [a reviewing court] conclude that the jury's verdict turned on its misunderstanding, based on the *Daniel W. E.* instruction, that it could not consider the [victim's] delayed reporting of the sexual abuse when assessing [her] credibility." (Citations omitted; internal quotation marks omitted.) Id., 233.

The defendant argues that the court's improper instruction was harmful because the victim's "delayed reporting was a critical factor in the case," and the *Daniel W. E.* instruction "stripped the defendant of his principal theory of defense." The defendant contends that his theory of defense was that the victim had fabricated her allegations of sexual assault and that theory was supported by the evidence of the victim's delayed reporting. We agree that the court's improper delayed reporting instruction was harmful.

In *Adam P.*, the court concluded that the defendant had not demonstrated that the trial court's improper *Daniel W. E.* instruction was harmful and, therefore, he was not entitled to a new trial. See *State* v. *Adam P.*, supra, 351 Conn. 234. In reaching its conclusion, the court considered "the record as a whole, including the jury instructions, the theory of defense, and the strength of the evidence presented" and determined that "it is not reasonably probable that the erroneous instruction misled the jury because it had sufficient tools with which to judge the victims' credibility, and *neither the verdict nor the defendant's theory of the case turned on delay.*" (Emphasis added.) Id. We are persuaded that the present case is distinguishable from *Adam P.* because the defendant's theory of the case turned on the victim's delay in reporting the sexual assault.

In *Adam P.*, the court determined that "the victims' delay in reporting the defendant's abuse played a relatively unimportant role in the defendant's theory of the case." Id., 238. "[T]he defendant's principal defense— that no sexual abuse had occurred and that the victims had fabricated such accusations—centered on his insufficient opportunity to sexually abuse the victims and the absence of physical evidence, categories *wholly separate* from any delayed reporting. The defendant's reliance on delay in support of his fabrication theory was minimal, and the jury was able to appreciate his

defense even if it arguably believed it was constrained to disregard delay in assessing the victims' credibility." (Emphasis added.) Id., 236.

Unlike in *Adam P.*, the theory of defense in the present case was that the victim fabricated her allegations of sexual abuse, and the defense relied heavily on evidence of the victim's delayed reporting to support that defense. While cross-examining the various witnesses, defense counsel repeatedly stressed the victim's delay in reporting the alleged sexual assault on which both charges in the substitute information were based. During cross-examination of the victim, in particular, defense counsel highlighted that she did not mention the forced oral sex on the following occasions: talking to her cousin on February 19, 2018; talking to her sisters, her brother R, her grandmother, and her father on March 25, 2018; providing a sworn statement to McClinch on March 25, 2018; being interviewed by Wheeler on March 26, 2018; talking to her school psychologist on March 27, 2018; and during Sheehy's forensic interview on March 27, 2018. Defense counsel also highlighted that, when the victim finally told her family about the forced oral sex, she did not tell them about the gravel lot on Dayton Road or that the defendant asked her whether she was going to report that he raped her.

Defense counsel's closing argument further illustrates that the defendant's primary theory of defense centered on the victim's delayed reporting because he spent most of his time relating the delay to her credibility. He stated: "[I]t's so crucial to look at [the victim's] testimony and the evidence to show she is not credible." He emphasized that "[s]he told you about what she claims happened on the night of February 18, 2018, but she admitted on cross-examination that she had numerous opportunities to tell someone that oral sex occurred; however, she didn't until almost two months

later." He listed thirteen people that she could have told about the forced oral sex and then stated: "Either [the victim] never told . . . anything to each one of these people, or she only told them that [the defendant] made comments and that mutual touching happened. She had a giant support system that she could've disclosed to but did not. She never mentioned to any of these people about oral sex, the gravel lot, or the comment allegedly made by [the defendant] before dropping her off [at] home. Only on April 4, 2018, did she decide to add to her story and include some of these details. *Please consider this when you're judging her credibility* . . . ." (Emphasis added.) Defense counsel also challenged Williams' expert testimony concerning typical reasons for delayed reporting by explaining that Williams never met the victim and did not know her background.

It is apparent to us, on the basis of our review of the testimony elicited and arguments made at trial, that the victim's delay in reporting the defendant's sexual abuse was paramount to the defendant's theory of the case. Cf. *State* v. *Adam P.*, supra, 351 Conn. 239 ("[t]he only explicit mention during closing arguments of delayed disclosure as related to credibility was brief"). Because the court instructed the jury to disregard delay in assessing the victim's credibility, it is reasonably probable that the jury was misled into thinking it could not consider the defendant's principal theory of defense.

The state nevertheless maintains that the verdict did not turn on the victim's delayed reporting and its potential effect on her credibility in the eyes of the jurors because its case was strong. Specifically, the victim "provided detailed testimony"; Williams testified about the typical behaviors of child sexual assault victims, delayed reporting, and typical grooming behavior; and

the testimony of J and L concerning uncharged misconduct were consistent with the victim's testimony. Therefore, the state argues, the defendant cannot establish that the court's improper instruction was harmful. We are not persuaded.

The court in *Adam P.*, in reaching its conclusion that the defendant failed to demonstrate that the *Daniel W. E.* instruction was harmful, relied on its determination that "[t]he state's case, even without physical or forensic evidence, was strong." *State* v. *Adam P.*, supra, 351 Conn. 240. Two victims had testified consistently about the details of the defendant's behavior, thereby corroborating each other's stories. Id. The state's expert witness "bolstered the victims' credibility" by explaining "the common triggers for reporting abuse and factors that might make a disclosure more or less credible," such as recounting idiosyncratic details. Id., 241–42. Additionally, three "detectives corroborated the victims' timeline of events . . . and detailed how they investigated and assessed the reliability of the victims' allegations." Id., 241. Moreover, the court stated: "[T]he jury's split verdict in the present case increases [its] confidence that the erroneous instruction was harmless because *what* the jury split its verdict on indicates that it assessed the victims' credibility. . . . Specifically, the jury found the defendant not guilty . . . as to incidents involving [one victim] . . . [and] guilty of . . . an incident in which [another victim] was the sole complainant . . . . The jury came to different conclusions about the veracity of the victims' claims, despite their other similarities . . . . Therefore, we are comfortable inferring, based on the present record, that the jury must have made a credibility determination based on something besides delay [in reaching its verdict]." (Citation omitted; emphasis in original.) Id., 242.

In the present matter, unlike in *Adam P.*, no witnesses were called to corroborate the victim's account of what

happened on February 18, 2018. The police in the present case were unable to corroborate the victim's timeline or other details of her statements. They canvassed the area of the incident for video footage and witnesses, but they were unable to find any witnesses or videos of the defendant's vehicle on the night of February 18, 2018. The only supporting evidence presented by the state was Williams' testimony about typical grooming behavior, J's testimony that the defendant made comments about shaving her pubic area, and L's testimony that the defendant touched her inappropriately in 2003. Even if J's testimony tended to corroborate the victim's testimony regarding similar statements he allegedly made to the victim and L's testimony demonstrated the defendant's propensity to sexually abuse children, neither specifically corroborates the victim's allegations of forced oral sex on February 18, 2018. Because the state lacked physical, forensic, and corroborating evidence, the case turned on the victim's credibility, which the defense challenged on the basis of her delayed reporting of the sexual assault. Unlike in *Adam P.*, the jury in the present case found the defendant guilty on all counts and, therefore, there is no split verdict from which we can infer that the jury assessed the victim's credibility on the basis of facts other than the delay.

Our Supreme Court has acknowledged that sexual assault cases presenting a "credibility contest characterized by equivocal evidence . . . is a category of cases that . . . is far more prone to harmful error." (Internal quotation marks omitted.) *State* v. *Favoccia*, 306 Conn. 770, 816–17, 51 A.3d 1002 (2012). Because the verdict turned on the victim's credibility and the defendant's theory of defense related the victim's delayed reporting to her credibility, it is reasonably probable that the jury was misled into thinking it could

not consider the delay in assessing the victim's credibility. Thus, we conclude that the defendant has met his burden of demonstrating that the court's improper instruction was harmful and, consequently, he is entitled to a new trial.

II

Although our conclusion that the court's improper delayed reporting instruction was harmful is dispositive of this appeal, we also address the defendant's claim that the court improperly denied his request to instruct the jury that, in evaluating evidence of uncharged misconduct offered by the state to prove the defendant's propensity to commit the charged crimes, the jury must first determine whether the state proved that the defendant had engaged in such conduct by a preponderance of the evidence, as this issue is likely to arise on remand. See *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 164, 971 A.2d 676 (2009) ("[b]ecause of our conclusion that this case must be remanded for a new trial, it is appropriate for us to give guidance on issues that are likely to recur on retrial").

The following additional facts are relevant to our resolution of this claim. On March 15, 2023, outside the presence of the jury, the court noted that L and J would be testifying about uncharged sexual misconduct and that it intended to give a limiting instruction before each testified and during its final jury charge. At that time, defense counsel requested that the court instruct the jury that, in evaluating evidence of uncharged misconduct offered by the state to prove the defendant's propensity to commit the charged crimes, the jury must first determine whether the state proved that the defendant had engaged in such conduct by a preponderance of the evidence. The court noted defense counsel's objection but overruled it. Specifically, the court found that the evidence of prior misconduct was admissible

because it was "relevant to the charged crime, not too remote, similar to the charged offense, committed upon persons similar to the prosecuting witnesses or witness, and that the probative value of the evidence outweighs its prejudicial effect." It thereafter determined that the jury could consider such evidence without finding that the defendant engaged in such conduct by a preponderance of the evidence.

That same day, the defendant filed a request to charge the jury with the following instruction: "The state has presented evidence of alleged uncharged acts of sexual misconduct. *It is for you to determine whether the state has proven by a preponderance of the evidence whether the defendant committed the alleged uncharged sexual misconduct.* If you find that the state has met that standard, then you may determine the extent, if any, to which that evidence establishes that the defendant had a propensity or tendency to engage in criminal sexual behavior. Bear in mind as you consider this evidence that, at all times, the state has the burden of proving that the defendant committed each of the elements of the offense charged in the information. *As to any evidence of uncharged misconduct, the state's burden is to prove that conduct by a preponderance of the evidence.*" (Emphasis added.) The court, however, declined to charge the jury that the state must prove that the defendant engaged in the alleged uncharged misconduct by a preponderance of the evidence.

After the conclusion of the presentation of evidence, the court provided the following instruction concerning uncharged misconduct: "You'll recall that I admitted the testimony of [L] and [J] for a limited purpose. You may only consider that testimony as it relates to the limits for which it was allowed, and you shall not consider such testimony in finding any other facts as to any other issue. Specifically, the defendant is charged with criminal sexual behavior; therefore, evidence of

the defendant's commission of another offense or offenses is admissible and *may be considered by you if it is relevant to prove that the defendant had the propensity or tendency to engage in the type of criminal sexual behavior with which he is charged.* You may use such evidence here in the form of the testimony of [L] and [J] *to the extent that you find it should be given weight* only as to the limited purpose for which it was admitted. However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the information. Bear in mind as you consider this evidence that . . . at all times, the state has the burden of proving the defendant committed each of the elements of the offenses charged in the information. I remind you; the defendant is not on trial for any act, conduct, or offense that is not charged in the information." (Emphasis added.) The court had given the jury substantively the same instruction before L testified and again before J testified. Before J testified, the court additionally stated: "[The defendant] has not been charged with and is not on trial for anything that is alleged to have occurred in the past with [J] or with [L]. So, when it comes time for you to deliberate, you can give this testimony . . . whatever weight you deem . . . that it deserves, if any, in making your decisions about the charged offenses."

On appeal, the defendant contends that the trial court was required to instruct the jury "that its consideration of the evidence is predicated on first finding that the prior acts actually occurred" by a preponderance of the evidence. (Emphasis omitted.) In support of his claim, he relies on *State* v. *Cutler*, 293 Conn. 303, 977 A.2d 209 (2009), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014); *State* v. *Ortiz*, 343 Conn. 566, 275 A.3d 578 (2022); and *State* v. *Greer*, 213 Conn. App. 757, 279 A.3d 268, cert. denied, 345 Conn. 916, 284 A.3d 299 (2022), cert. denied,      U.S.

, 143 S. Ct. 1061, 215 L. Ed. 2d 282 (2023). We disagree.

We begin our analysis with the standard of review. "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Greer*, supra, 213 Conn. App. 783–84.

In *State* v. *Cutler*, supra, 293 Conn. 303, the defendant claimed that "the trial court improperly declined to instruct the jury to apply a preponderance of the evidence standard as to its consideration of the prior misconduct evidence." Id., 315. Our Supreme Court rejected the claim, stating that "[w]here the admission of prior misconduct evidence depends on the trial court's determination that there is sufficient evidence from which the jury reasonably could conclude that the prior acts of misconduct occurred and that the defendant was the actor . . . we see no reason to impose on trial courts a jury instruction that requires jurors to consider the properly admissible prior misconduct evidence at a higher standard. . . . Accordingly, we conclude that it is not necessary that a trial court instruct the jury that it must find, by a preponderance of the evidence, that prior acts of misconduct actually occurred at the hands of the defendant. Instead, a jury may consider prior misconduct evidence for the proper

purpose for which it is admitted if there is evidence from which the jury reasonably could conclude that the defendant actually committed the misconduct." (Citations omitted; footnote omitted.) Id., 321–22. The court then concluded that "[t]he trial court properly determined that there was evidence from which the jury reasonably could conclude that the defendant actually committed the prior acts of misconduct, and its use of the word 'believe' [in its jury instruction] comports with the requirement that a jury may consider prior misconduct evidence if there is evidence from which it reasonably could conclude that the defendant committed the acts." Id., 322.

In *State* v. *Ortiz*, supra, 343 Conn. 566, the defendant claimed that the trial court "improperly declined to . . . instruct the jury . . . that it could consider evidence of his involvement in [uncharged misconduct] to the extent that the jury believed that the defendant was, in fact, involved in the [uncharged misconduct] and, then, only to the extent that the jury found that it logically, rationally and *conclusively* supported the issue for which it was being offered—namely, to establish the defendant's motive for [committing the charged offense]." (Emphasis altered; internal quotation marks omitted.) Id., 590. Relying on *Cutler*, our Supreme Court concluded that "the trial court properly declined the defendant's request to include the word 'conclusively' in its instruction on the use of prior misconduct evidence. Rather, the court properly instructed the jury that, even if it credited [the witness'] testimony that the defendant was engaged in [uncharged misconduct] on the night in question, the jury could consider that evidence only if it found that it 'logically and rationally support[ed] the state's theory of motive . . . .' " Id., 603.

In *State* v. *Greer*, supra, 213 Conn. App. 757, the defendant claimed that the trial court, "in its mid-trial and final instructions to the jury, improperly failed to

provide the jury with a standard of proof to apply in determining whether the defendant had committed acts of uncharged misconduct." Id., 776. This court, relying on *Cutler*, stated: "[T]he [trial] court instructed that it was for the jury 'to determine' whether the defendant engaged in the uncharged misconduct. We discern no meaningful distinction between the 'believe' standard endorsed in *Cutler* and the court's use of the word 'determine' in the present case. For that reason, we are not persuaded that the court's instructions were deficient. . . . Accordingly, we find no error in the court's instructions to the jury that it must determine that something occurred rather than believe that it occurred. Consequently, we conclude that our Supreme Court's decision in *Cutler* controls and, therefore, that the court properly instructed the jury regarding the uncharged misconduct evidence." Id., 786.

In the present case, the trial court instructed the jury that it could consider the state's prior misconduct evidence "if it is relevant" and "to the extent that you find it should be given weight" for the limited purpose for which it was offered. Pursuant to our Supreme Court's decision in *Cutler*, the court was not required to instruct the jury that, before it may consider such evidence, it must find that the state proved the uncharged misconduct by a preponderance of the evidence. The court, therefore, properly declined to instruct the jury on the preponderance of the evidence standard.

The defendant nevertheless argues that the trial court was required to instruct the jury that it must "believe" or "determine" that the defendant actually engaged in the uncharged misconduct before it may consider such evidence. Although our courts have upheld instructions using those words, no cases have indicated that those words are *required*. See *State* v. *Cutler*, supra, 293 Conn. 322; *State* v. *Greer*, supra, 213 Conn. App. 786. Rather,

we are persuaded that the court's instruction that the jury may consider the testimony of L and J "if it is relevant" and "to the extent that you find it should be given weight" comports with the requirement that a jury may consider prior misconduct evidence if there is evidence from which it reasonably could conclude that the defendant committed the acts. The court's charge as a whole instructed the jury that, as the finder of fact, it was entitled to determine what weight, if any, should be given to the witnesses' testimony. Moreover, the court's language is consistent with instruction 2.6-12 of the Connecticut model criminal jury instructions.[4] "This court has noted that [w]hile not dispositive of the adequacy of the [jury] instruction, an instruction's uniformity with the model instructions is a relevant and persuasive factor in our analysis." (Internal quotation marks omitted.) *State* v. *Leandry*, 161 Conn. App. 379, 396–97, 127 A.3d 1115, cert. denied, 320 Conn. 912, 128 A.3d 955 (2015). Consequently, the court properly instructed the jury regarding the uncharged misconduct evidence.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[4] Instruction 2.6-12 of the Connecticut model criminal jury instructions provides: "When the defendant is charged with criminal sexual behavior, evidence of the defendant's commission of another offense or offenses is admissible and may be considered if it is relevant to prove that the defendant had the propensity or a tendency to engage in the type of criminal sexual behavior with which (he/she) is charged. However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the information. Bear in mind as you consider this evidence that at all times, the state has the burden of proving that the defendant committed each of the elements of the offense charged in the information. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the information." Connecticut Criminal Jury Instructions 2.6-12, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited April 16, 2025).