******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* RAEON A.[*]
## (SC 21028)

Mullins, C. J., and D'Auria, Ecker, Alexander,
Dannehy and Bright, Js.

*Syllabus*

Convicted of risk of injury to a child and sexual assault in the first degree in connection with the sexual abuse of the minor victim, R, the defendant appealed to this court. On appeal, the defendant claimed, inter alia, that the trial court had violated his federal constitutional rights to due process and to a fair trial by instructing the jury, in accordance with this court's directive in *State* v. *Daniel W. E.* (322 Conn. 593), that it was not to consider R's delayed reporting of the alleged incidents of sexual abuse in evaluating R's credibility. *Held*:

This court declined to review the defendant's unpreserved claim of instructional error under *State* v. *Golding* (213 Conn. 233), as the defendant failed to demonstrate that his claim was of constitutional magnitude and, therefore, failed to satisfy the second prong of *Golding*.

The defendant's contention that the challenged instruction in the present case violated his federal constitutional rights to due process and to a fair trial insofar as it usurped the jury's role as the sole trier of fact and diluted the state's burden of proof was inconsistent with this court's holding in *State* v. *Adam P.* (351 Conn. 213), in which this court concluded that a similar claim by the defendant in that case was not of constitutional magnitude.

Moreover, this court declined the defendant's invitation to reconsider its conclusion in *Adam P.*, as this court had only recently decided *Adam P.*, the defendant did not present any sound reason for this court to reconsider its analysis therein, and *Adam P.* was consistent with a long line of appellate cases holding that alleged errors in constancy of accusation instructions are not of constitutional magnitude.

Furthermore, the defendant could not prevail on his claim that the trial court had committed plain error when it instructed the jury not to consider R's delay in reporting the alleged sexual abuse, as the court's instruction was consistent with *Daniel W. E.*, which was the governing law at the time of the defendant's trial, and a trial court's proper application of the law

---

[*]In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024); we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

existing at the time of trial cannot constitute reversible error under the plain error doctrine.

Argued April 8—officially released June 23, 2026

*Procedural History*

Substitute information charging the defendant with two counts of the crime of risk of injury to a child and one count of the crime of sexual assault in the first degree, brought to the Superior Court in the judicial district of Ansonia-Milford at Milford and tried to the jury before *Hall, J.*; verdict and judgment of guilty of one count each of risk of injury to a child and sexual assault in the first degree, from which the defendant appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, assigned counsel, with whom, on the brief, was *Kevin M. Black, Jr.*, assigned counsel, for the appellant (defendant).

*Rebecca R. Zeuschner*, deputy assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, and *Amy Bepko*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, C. J. The defendant, Raeon A., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant's principal claim on appeal is that the trial court violated his federal constitutional rights to due process and a fair trial by instructing the jury that, in evaluating the credibility of the minor victim, R, who is the defendant's biological daughter, it could not consider any delay by R in reporting the defendant's sexual assault of her. The defendant seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Alternatively, the defendant asserts that this

court should reverse his conviction under the plain error doctrine because of the allegedly improper instruction.[1]

We conclude that the defendant's claim of instructional error is unavailing. His claim is not reviewable under *Golding* because, as we have held previously, the challenged constancy of accusation instruction does not implicate a criminal defendant's constitutional rights. See, e.g., *State* v. *Adam P.*, 351 Conn. 213, 224, 231–33, 330 A.3d 73 (2025). Moreover, we decline to invoke the plain error doctrine because the instruction provided was consistent with our decision in *State* v. *Daniel W. E.*,

[1] In his principal brief to this court, the defendant also claimed that reversal of his conviction is warranted under the plain error doctrine because the trial court improperly admitted evidence of the defendant's educational neglect of R as uncharged misconduct evidence.

At the time that the defendant's principal brief was filed, the trial transcript indicated that the trial court had granted the state's request to present the educational neglect evidence as uncharged misconduct evidence. Specifically, the transcript reflected that the trial court stated, "I do intend to—I'm *going to* allow that as notice of uncharged misconduct, but I do intend to allow that [evidence] . . . ." (Emphasis added.)

After the defendant filed his principal brief with this court, the state filed in this court a motion for permission to file a late trial court motion; see Practice Book § 66-3; and a motion for rectification directed to the trial court. See Practice Book §§ 66-2 (e) and 66-5. In its motion for rectification, the state asserted that the relevant portion of the transcript must be corrected to align with the audio recording, which revealed that, in ruling on the admissibility of the educational neglect evidence, the trial court actually stated, "I *don't* allow that as notice of uncharged misconduct . . . ." (Emphasis added.) Thereafter, the defendant also filed in this court a motion for permission to file a late trial court motion and a motion for rectification directed to the trial court, in which he agreed that the record should be rectified as requested by the state. This court granted both parties' motions for permission to file their late trial court motions and forwarded the motions for rectification to the trial court. After a hearing, the trial court granted those motions and ordered that the record be rectified to read as follows: "I do intend to—um—I *don't* allow that as notice of uncharged misconduct, but I do intend to allow that [evidence] . . . ." (Emphasis added.)

In his reply brief to this court, the defendant concedes that the rectification of the record "established that . . . the evidence in question was not in fact admitted as uncharged misconduct evidence." We conclude that the defendant's claim of plain error on this basis has therefore been resolved because both parties agree that the record, as rectified, makes clear that the trial court did not admit the evidence of the defendant's educational neglect of R as uncharged misconduct evidence. Consequently, we need not reach the defendant's claim that the trial court improperly permitted the state to present the evidence of educational neglect as uncharged misconduct evidence.

322 Conn. 593, 629, 142 A.3d 265 (2016), which was the governing law at the time of the defendant's trial.[2] Accordingly, we affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. When R was about five or six years old, she stopped living in a shelter with her mother and began to live with the defendant, who is her biological father. The defendant and R lived together for the next several years, until R was nearly ten years old, and, during most of that time, they resided in a house in Derby that belonged to the defendant's parents. This house had two floors and a basement suite. The defendant's parents, brother, and sister lived on the first and second floors, while the defendant and R occupied the basement.

While they lived together, the defendant sexually assaulted R "[a]lmost every day." When the defendant helped R shower, he would touch her genitals with a washcloth and his fingers. In other parts of the basement, the defendant subjected R to various other forms of sexual contact. On one occasion, after R fell asleep in the defendant's bed while watching television, R awoke to the defendant touching her vagina, breasts, and buttocks, and he then attempted to engage in vaginal-penile intercourse.

On May 15, 2016, when she was nine years old, R disclosed the defendant's sexual abuse to her friend, Tiara, who then relayed the allegations to her mother, Priya Young. The next morning, on May 16, 2016, Young conveyed the disclosed sexual abuse to Jennifer Olson, the principal of Irving School, an elementary school in Derby where R was a student. In compliance with her responsibilities as a mandated reporter, Olson reported the allegations of sexual abuse to the Department of

---

[2] On February 11, 2025, this court officially released its decision in *Adam P.*, which overruled the modification of the constancy of accusation doctrine announced in *Daniel W. E.* and returned the doctrine to the standards set forth in *State* v. *Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996). See *State* v. *Adam P.*, supra, 351 Conn. 215, 220, 225–26, 229.

Children and Families (DCF), and she also notified the Derby Police Department. Both DCF and the police conducted investigations of R's allegations of sexual abuse, which included conversations with Olson, a twenty minute interview of R at Irving School, and a forensic interview of R at the Yale Child Abuse Clinic.

Trial began on February 14, 2024, nearly eight years after R's initial disclosure to Tiara. During her testimony at trial, R recounted the defendant's sexual abuse, including incidents of sexual abuse involving sex toys that she had not previously disclosed. The prosecutor also presented the expert testimony of Monica Vedro Madigan, a licensed clinical social worker and forensic interviewer, who explained the general characteristics regarding the disclosure of sexual abuse by children. Specifically, Madigan explained that "most children delay in disclosing sexual abuse," sometimes for months or even years after its occurrence, and she described disclosure as "a process" in which a sexually abused child "may not give all of the details at once" or in chronological order.

The defendant's principal theory of defense at trial was that the alleged instances of abuse did not occur. In support of that defense, the defendant primarily sought to challenge the adequacy of the investigations into R's allegations, to highlight the lack of corroborative physical evidence, and to demonstrate his insufficient opportunity to assault R. During his closing argument, defense counsel argued to the jury that R's testimony regarding the incidents of sexual abuse involving sex toys was a recent fabrication because she had never disclosed those incidents before.

In its charge to the jury, the trial court provided a constancy of accusation instruction consistent with our decision in *Daniel W. E.* (*Daniel W. E.* instruction). See *State* v. *Daniel W. E.*, supra, 322 Conn. 629. Specifically, the trial court provided the jury with the following instruction: "There was evidence in this case that [R] delayed in making an official report of the alleged sexual assault. There are many reasons why sexual assault

victims may delay in officially reporting the events, and, to the extent **[R]** delayed in reporting the alleged offense here, the delay should not be considered by you in evaluating her credibility.''

Following trial, the jury found the defendant guilty of sexual assault in the first degree and risk of injury to a child by having contact with the intimate parts of R in a sexual and indecent manner. The jury found the defendant not guilty of another count of risk of injury to a child, in which the state alleged that he had subjected R to contact with his intimate parts. The trial court imposed a total effective sentence of twenty years of imprisonment, fifteen years of which constituted a mandatory minimum, followed by ten years of special parole, and ordered that he comply with the lifetime sex offender registration requirements. This direct appeal followed. See General Statutes § 51-199 (b) (3).

On appeal, the defendant claims that the trial court improperly provided the jury with a *Daniel W. E.* instruction. Not having preserved this claim at trial, the defendant seeks review pursuant to *Golding*.[3] In response, the state argues that the defendant is not entitled to *Golding* review because his claim is not of constitutional magnitude.[4] We agree with the state and, therefore, conclude that the defendant's claim is unreviewable under the second prong of *Golding*.

[3]Pursuant to *Golding*, ''a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.'' (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*). ''The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim.'' (Internal quotation marks omitted.) *State* v. *Carlos G.*, 354 Conn. 21, 26, 349 A.3d 1 (2026).

[4]The state does not argue that the defendant has implicitly waived any challenge to the trial court's instructions pursuant to *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011).

For his claim to be reviewable under *Golding*, a defendant must satisfy the second prong, which requires the defendant to show that "the claim is of constitutional magnitude alleging the violation of a fundamental right . . . ." *State* v. *Golding*, supra, 213 Conn. 239. Only certain claims of instructional error are truly constitutional in nature. See, e.g., *State* v. *LaBrec*, 270 Conn. 548, 557–58, 854 A.2d 1 (2004). "The defendant . . . bears the responsibility of demonstrating that his claim" of instructional error "is indeed a violation of a fundamental constitutional right." *State* v. *Golding*, supra, 240. "Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." Id.; see also, e.g., *State* v. *Cutler*, 293 Conn. 303, 326, 977 A.2d 209 (2009) ("[r]obing [garden-variety] claims of improper jury instructions concerning evidentiary matters in the majestic garb of constitutional claims does not make such claims constitutional in nature" (internal quotation marks omitted)), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014).

The defendant argues that his challenge to the *Daniel W. E.* instruction is of constitutional magnitude because the trial court, in instructing the jury not to consider any delay by R in reporting the defendant's sexual abuse when evaluating her credibility, precluded the jury from drawing reasonable inferences from the evidence before it. Doing so, the defendant contends, violated his rights to due process and a fair trial under the sixth and fourteenth amendments to the United States constitution by usurping the jury's role as the sole trier of fact and credibility, and by reducing the state's burden of proof.

We are not persuaded by the defendant's attempt to frame his instructional claim as one of constitutional magnitude. In *Adam P.*, we addressed a virtually identical argument to that of the defendant in the present case and concluded that the *Daniel W. E.* instruction does not implicate the constitutional rights of criminal defendants. See *State* v. *Adam P.*, supra, 351 Conn.

215, 218–19, 224, 231–33. The defendant in *Adam P.* argued that the *Daniel W. E.* instruction had violated his right to due process because "requiring that jurors disregard any delay in reporting abuse when assessing the victims' credibility constitutes an invasion of the jury's fact-finding role." Id., 219; see also id., 218. He further argued that the *Daniel W. E.* "instruction improperly shifted the state's burden of proof to him by signaling to the jury that the victims' delay in reporting was a symptom of the defendant's sexual abuse, which, in turn, undermined his . . . defense" that the victims had fabricated their accusations of sexual abuse. Id., 219.

Even though we ultimately determined that the *Daniel W. E.* instruction was so confusing as to warrant its abandonment, we rejected the defendant's argument that the trial court had violated his right to due process by giving the charge. See id., 215, 220, 224–25, 229, 231–33. In doing so, we relied on our previous recognition "that general credibility instructions regarding constancy of accusation testimony are nonconstitutional in nature . . . ." Id., 231. We further explained that this court had "previously . . . considered an instructional impropriety to be of constitutional dimension only when it has gone to the elements of the charged offense, the burden of proof or the presumption of innocence . . . ." (Citations omitted; internal quotation marks omitted.) Id. Accordingly, because "neither delay nor credibility is an element of the charged offenses," "shift[s] the state's burden of proof to the defendant," or "implicate[s] the defendant's presumption of innocence," we concluded that the alleged error in the *Daniel W. E.* instruction was not of constitutional dimension. Id., 232–33.

The defendant requests that we reconsider our conclusion in *Adam P.* concerning the nonconstitutional nature of the *Daniel W. E.* instruction. We decided *Adam P.* a little more than one year ago, and the defendant has not presented any sound reason for reconsideration of our reasoning therein. Moreover, *Adam P.* is consistent with the long line of appellate cases holding that alleged errors in constancy of accusation instructions are not

of constitutional magnitude,[5] and, therefore, we reject the defendant's invitation to overrule our conclusion in *Adam P.* Accordingly, we conclude that the defendant's claim is unreviewable under *Golding*.

The defendant also claims that the trial court committed plain error when it provided the *Daniel W. E.* instruction.[6] The present case, however, does not merit reversal under the plain error doctrine. As we explained previously, the instruction the trial court gave in this case is consistent with *Daniel W. E.*, which was the governing law at the time of the defendant's trial. "It is axiomatic that the trial court's proper application of the law existing at the time of trial cannot constitute reversible error under the plain error doctrine." *State* v. *Diaz*, 302 Conn. 93, 104 n.8, 25 A.3d 594 (2011); see, e.g., *State* v. *Adam P.*, supra, 351 Conn. 235 n.4 (there was no plain error when trial court "laudably undertook its best efforts to faithfully implement the direction that this court provided in *Daniel W. E.*," which was law existing at time of trial). Accordingly, we reject the defendant's claim of plain error.[7]

---

[5]This court and the Appellate Court have both consistently held that claims alleging errors in constancy of accusation instructions are not of constitutional magnitude, including claims challenging the trial court's provision of constancy of accusation instructions premised on our decision in *State* v. *Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996); see, e.g., *State* v. *Daniel W. E.*, supra, 322 Conn. 610; *State* v. *Roberto Q.*, 170 Conn. App. 733, 742–43, 155 A.3d 756, cert. denied, 325 Conn. 910, 158 A.3d 320 (2017); *State* v. *Rivera*, 145 Conn. App. 344, 351–53, 76 A.3d 197, cert. denied, 310 Conn. 962, 83 A.3d 344 (2013); *State* v. *Antwon W.*, 118 Conn. App. 180, 200–201, 982 A.2d 1112 (2009), cert. denied, 295 Conn. 922, 991 A.2d 568 (2010); the trial court's failure to give a limiting instruction as to the proper use of constancy evidence; see, e.g., *State* v. *Wild*, 43 Conn. App. 458, 466–67, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996); and the nature of the *Daniel W. E.* instruction. See, e.g., *State* v. *William G.*, 232 Conn. App. 317, 327–29, 335 A.3d 511 (2025).

[6]The plain error doctrine, set forth in Practice Book § 60-5, is a rule of reversibility "reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017).

[7]In his principal brief, which he filed shortly before our decision in *Adam P.* was released, the defendant requests that we exercise our

The judgment is affirmed.

In this opinion the other justices concurred.

---

supervisory authority to abandon the *Daniel W. E.* instruction. Our decision in *Adam P.* resolved the defendant's request because, in that case, we enjoined trial courts from providing the *Daniel W. E.* instruction. See *State* v. *Adam P.*, supra, 351 Conn. 215, 220, 225, 229.

The defendant further asks that this court exercise its supervisory authority to review his unpreserved claim of instructional error and to reverse his conviction. We decline to do so. As we have previously explained, "[b]ypass doctrines permitting the review of unpreserved claims such as [*Golding*] . . . and plain error [claims] . . . are generally adequate to protect the rights of [a] defendant and the integrity of the judicial system . . . . [T]he supervisory authority of this state's appellate courts is not intended to serve as a bypass to the bypass, permitting the review of unpreserved claims of [case-specific] error—constitutional or not—that are not otherwise amenable to relief under *Golding* or the plain error doctrine." (Internal quotation marks omitted.) *State* v. *Turner*, 334 Conn. 660, 686–87, 224 A.3d 129 (2020); see also, e.g., *In re Aisjaha N.*, 343 Conn. 709, 724, 275 A.3d 1181 (2022) ("[o]ur supervisory powers are not a last bastion of hope for every untenable appeal" (internal quotation marks omitted)).